**John RIZZO, Plaintiff,**

v.

**Daniel ZUBRIK, Defendant.**

**No. 72 Civ. 4741.**

United States District Court,
S. D. New York.

April 1, 1975.

Mark L. Amsterdam, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for defendant; David R. Spiegel, Asst. Atty. Gen., of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Back in 1972, plaintiff and one Jerome Rosenberg were fellow prisoners at the Ossining Correctional Facility (better known as Sing Sing Prison). Plaintiff had what he considered to be an unhappy experience with a prison physician (the defendant in this action) and related it to Rosenberg. Rosenberg—who has spent most of his jail time studying law—saw the possibilities of a civil rights cause of action under 42 U. S.C. § 1983, and drafted a complaint for plaintiff to file. Thereafter, he successfully advised plaintiff how to resist various attacks made against the complaint by the New York Attorney General on defendant's behalf. In April of 1974, plaintiff was released on parole, and the instant case was set down for pre-trial conference.

Appearing pro se, but assisted by a non-lawyer representative of attorney William Kunstler, plaintiff asserted that he was without ability to retain a lawyer and that, in any event, Rosenberg was the only person who understood his case or in whom he had any confidence. In brief, he asserted that Rosenberg was the only person available to establish his serious charges against the prison doctor, and he urged me to permit Rosenberg to represent him at the trial of this action. I ruled that Rosenberg would not be brought to New York *solely* for the purposes of this action, but that if he should happen to be brought down for some other purpose—and if his presence here coincided with a gap in my calendar—I would permit him to represent plaintiff upon the trial of this action. These two conditions having been met (Rosenberg being in West Street in connection with a case of his own before Judge Judd in the Eastern District of New York, and my calendar proving amenable) Rosenberg was permitted to represent the plaintiff in a trial of this action which commenced on December 9, 1974 and ended two days later with an $8,000 verdict for plaintiff. That verdict—for reasons not here relevant—has since been set aside. The plaintiff now moves that I permit Rosenberg either to represent him or to assist his new counsel in so doing.

While the jury was deliberating, I stated in open court that I had concluded that my action in permitting Rosenberg to represent plaintiff at the trial (and thus necessarily taking him out of state custody for that purpose) had been without authority in law, and had constituted a gross abuse of discretion. As Rosenberg's trial representation of plaintiff received considerable publicity at the time, I deem it appropriate formally to set forth in some detail my reasons for now believing my action in per-

mitting this representation to have been unwarranted.

Any analysis of the legal issues involved must begin with the landmark case of Johnson v. Avery (1969), 393 U. S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. There the court was faced with a classic confrontation between a state asserting an interest in enforcing a prison rule, and a prisoner, claiming that the rule infringed a constitutional right.

In *Avery*, a prisoner was disciplined for violating a prison regulation which prohibited inmates from assisting other prisoners in preparing habeas corpus petitions. The Court held that "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief," inmates could not be barred from furnishing assistance to each other (393 U.S. at 490, 89 S.Ct. at 751). The Court stressed the importance of the writ of habeas corpus, and stated that since its purpose was "to enable those unlawfully incarcerated to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." (at 485, 89 S.Ct. at 749.)

Following *Avery*, the Court in Younger v. Gilmore (1971), 404 U.S. 15, 92 S. Ct. 250, 30 L.Ed.2d 142, aff'g, 319 F. Supp. 105 (N.D.Cal.1970), affirmed a three-judge court judgment which required state officials to provide indigent inmates with access to a reasonable law library for preparation of legal actions. And last year in Wolff v. McDonnell (1974), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, the Court extended *Avery* specifically to allow inmate assistance on prisoner civil rights action brought pursuant to 42 U.S.C. § 1983. In an opinion by Mr. Justice White, the Court there stated that a civil rights action, like a writ of habeas corpus, served to protect basic constitutional rights, observing (at 579, 94 S.Ct. at 2986):

"The right of access to the courts upon which *Avery* was premised, is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. It is futile to contend that the Civil Rights Act has less importance in our constitutional scheme than does the Great Writ. The recognition by this Court that prisoners have certain constitutional rights which can be protected by civil rights actions would be diluted if inmates, often 'totally or functionally illiterate,' were unable to articulate their complaints to the court."

█ It is thus apparent that an inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold. Furthermore, this constitutional imperative prevails over a number of legitimate state concerns involving a state's administration and management of its correctional institutions. See, Gilmore v. Lynch (N.D.Cal. 1970), 319 F.Supp. 105, aff'd, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142.

██ However, those decisions have no bearing on the situation at bar. In all of them—insofar as they authorized (or prevented a state from prohibiting) one prison inmate to give legal assistance to another—it was established that the prisoner assisted had no other way to vindicate his constitutional rights. No such situation was here presented. Plaintiff, having been paroled and thus back "on the street", was in the same situation as any other pro se plaintiff. He had the choice of representing himself or finding some lawyer (either "pro bono" or for a contingent fee) to come to his assistance. The mere fact that he preferred or had confidence in Rosenberg did not present a claim of constitutional proportions which would authorize this court to interfere with the state's custody of a duly convicted criminal.*

---

*I may note that it is irrelevant that I interfered with state custody only to the limited extent of permitting Rosenberg to appear before me while already here for another purpose. I had no authority to interfere at all.

Sostre v. McGinnis (2d Cir. 1971), 442 F.2d 178, 201, cert. denied, 404 U.S. 1049, 92 S.Ct. 714, 30 L.Ed.2d 740.

Nothing herein contained is intended to suggest that I would have had any different views as to the proper exercise of the federal court's power had plaintiff still been in jail. When such a situation presents itself it will be time enough to consider whether the *Avery* doctrine should be extended to require a prisoner to be actually taken out of state custody for the purpose of giving legal assistance to another and, if so, whether that could be done in a situation where, as here, plaintiff is not seeking protection from present injustice but only damages for past conduct.

The plaintiff's application for leave to have Rosenberg appear at any future trial is accordingly denied.

So ordered.