STATE EX REL. REICHERT *v.* YOUNGBLOOD

[No. 28,808. Filed May 28, 1947.]

*Theodore Lockyear, Elmer Q. Lockyear, Benj. F. Zeig* and *French Clements* all of Evansville, for relator.

*Ward & Ward,* of Indianapolis, *R. Owen Williams* and *W. C. Welborn,* both of Evansville, for respondents.

EMMERT, J.—This is a petition for alternative writ of mandate brought by the relator, Manson L. Reichert, against the regular presiding judge of the Vanderburgh Circuit Court. The petition, together with the exhibits made a part thereof, states in substance that on April 28, 1947, the relator offered to file in the Vanderburgh Circuit Court a verified petition alleging that on the 3rd day of April the grand jury of the Vanderburgh Circuit Court for the March Term, 1947, returned three separate indictments against him, which were docketed in said court as causes numbered 3501, 3503 and 3505; that in Cause No. 3501 he was charged in one count with the crime of malconduct, misfeasance and oppression in office as mayor of the city of Evansville, that in Cause No. 3503, wherein the relator was charged by

indictment in nine counts with the offense of corrupt practices, in counts 3, 4, 5, 6, 8 and 9 the time of the alleged offenses was barred by the statute of limitations, and the court sustained relator's motion to quash each of said counts, that in Cause No. 3505 he was charged in one count with the crime of false pretenses.

That on April 22, 1947, said grand jury returned an additional indictment in two counts against the relator, charging him with the crime of malconduct, misfeasance and oppression in office as mayor of the city of Evansville. Relator further alleged he has been the mayor of Evansville since January 1, 1943, and at and before the primary election in May he was a candidate for renomination for said office and that he was, during the times alleged, the county chairman of one of the major political parties. Relator further alleges that before the time of drawing, impaneling, swearing and instructing said grand jury, he was not charged with any crime, and was not in custody or on bail to answer any offense or crime, and that he had no personal knowledge that the grand jury intended to investigate his conduct, or was going to return any indictments against him, and he was not present in the Vanderburgh Circuit Court, either in person or by counsel, at the time the March Term grand jury was impaneled, sworn and instructed by the court, and that therefore he has had no opportunity to challenge said grand jurors, or any member thereof, but that he presents his petition at the earliest opportunity after discovering the facts stated in his petition.

Relator in said petition further charged in substance that a certain member of said grand jury, was a political enemy of this relator; that relator as mayor discharged the said grand juror from his employment with the city of Evansville, but that thereafter said

grand juror obtained employment with the State of Indiana, but that later he was discharged from his employment with the State, and that said grand juror blamed the relator for said discharge.

That on the 5th day of November, 1946, said grand juror was a political worker at the polls in Precinct No. 8 in the city of Evansville where he was arrested by an election sheriff for alleged violation of the election laws; that thereafter said grand juror wrongfully blamed relator for his arrest.

That on the 20th day of March, 1947, and after the impaneling of said grand jury said grand juror voluntarily informed two police officers that they were being investigated by the grand jury, that the prosecuting attorney of Vanderburgh Circuit Court was out to get them before said grand jury, but that he, the said grand juror, controlled said grand jury and would control the votes of himself and two other members thereof, and would see that the two police officers were not indicted; that on the 13th day of April, said grand juror informed one of said policemen that the grand jury was continuing the investigation of his conduct but that he could still control the votes of other members of the grand jury and that said policeman would not be indicted.

That upon various occasions the said grand juror related to various persons how he voted with reference to the return of various indictments returned by said grand jury.

That on the 23rd day of April, 1947, said grand juror reiterated to divers persons that he was prejudiced against the relator because of loss of his position as a state governmental employee, and that he could not impartially act as a grand juror so far as relator was

concerned, and that he was ready to make such a statement to the Vanderburgh Circuit Court.

Relator further charged that said grand juror since the time he was drawn as a grand juror for the March Term, and at the time he was impaneled, and since becoming a member of said grand jury, and to the date of his offer to file the petition with the Vanderburgh Circuit Court, had the design, purpose and intent of wrongfully indicting the relator and that said misconduct upon his part was illegal, contemptuous to the Vanderburgh Circuit Court, and prejudicial to the substantial rights of the relator.

Said relator further alleged "That after being drawn as a Grand Juror and prior to being impanelled, sworn and instructed as such, said . . . . . (grand juror) informed divers persons that he knew how he became a member of said Grand Jury, and that said Grand Jury was going to indict this petitioner and informed divers persons in words to this effect: 'I know how I got on the Grand Jury.' 'We are going to get the Mayor. The Mayor is going to be indicted by the Grand Jury, here's where we put the S——— B——— in and here's where we will take him out.' "

Relator further alleged that he believed that unless discharged said grand jury would return other erroneous indictments against him by reason of the prejudice and misconduct of said grand juror; that relator was a resident and citizen of Vanderburgh County, Indiana and his substantial rights as a citizen were being violated and impaired. Relator further alleges he has no other adequate remedy available to him except the issuance of a mandate. The petition to the Vanderburgh Circuit Court prayed that relator be permitted to introduce evidence in support of his petition, and that upon

hearing of the evidence the court order the discharge of said grand juror as a member of the March Term 1947 Grand Jury, and that said grand jury be discharged, and for other proper relief.

The respondent has filed his verified response and return to the temporary writ issued by this court April 30th, in which respondent alleged he is the duly elected, qualified and acting judge of the Vanderburgh Circuit Court; that relator, by his attorneys, did offer to file the said described petition with the Vanderburgh Circuit Court; that thereupon the prosecuting attorney objected to the filing of said petition whereupon the court took the matter under advisement; that thereafter on April 29th the court heard oral arguments by counsel for relator and the prosecuting attorney, and thereupon sustained the objection to filing said petition and denied the right of petitioner to file said petition. Respondent denies that the substantial rights of the relator as a resident and citizen of Vanderburgh County will be impaired if he is not permitted to file said petition and further denies there is no other adequate remedy available to the relator except the issuance of a mandate from this court.

He further alleges that the petition was *ex parte* with no defendants thereto and no summons issued thereon, and that he, as judge, decided said petition did not give the Vanderburgh Circuit Court any jurisdiction to grant the relator any remedy by due course of law, and that said court had no jurisdiction over the subject matter contained in said petition, and that it had no jurisdiction over the particular petition; that said petition was a collateral attack on the integrity of the grand jury, and that the relator in said petition did not allege he was innocent and that the matters

referred to and set out in said petition "could only be properly and legally presented by relator directly in said respective indictments already returned against him, or directly in proceedings where indictments may be returned against him, if any, . . ."

Respondent further alleges he "is not yet of the opinion that said Grand Jury has been in session long enough, and the public interests do not require that it should adjourn"; that said grand jury "has never reported to respondent that it is through with its work or completed the order of inquiry as commanded by law"; "That there is no provision under the law for the challenge of an individual grand juror, or to the array, by the relator when called to plead to an indictment against him, and that there is no provision under the law in Indiana which permits relator, either before or after indictment, after the grand jurors have been impaneled and sworn, to challenge either an individual on such grand jury, or to challenge the array, on account of bias or prejudice entertained by said juror or jurors against him, or for any reason whatever as stated in relator's petition"; and that the relator should "raise the questions presented by his said petition by a proper plea directed to indictments returned against him"; and that all of these acts done in said manner were done in the exercise of sound judicial discretion and this court "has neither the power, jurisdiction nor authority, by mandate, to order or direct him to change his said decision, or order or direct him to receive said petition, or to docket the same under a new and separate number, or to order and direct him to reach the designated conclusion of hearing evidence upon said petition."

It is important to note that in respondent's return at no place does he deny generally or specifically the acts,

conduct or the relator's allegations concerning the accused grand juror. Therefore, *for the purposes of this opinion such allegations must be deemed true, regardless of what the finding may be by a trial court if such matter should subsequently be presented to it.*

The grand jury system came to this country as a part of the common law. 38 C. J. S. 982. In this state its selection, impaneling, swearing, instruction, rights, powers and duties are largely governed by statute. However, when cases not governed by the statute arise, resort may be had to the common law principles as declared by the courts of this state, as well as other states, for guidance. *Williams* v. *State* (1919), 188 Ind. 283, 123 N. E. 209.

As before noted, the allegations of the relator that the grand juror informed various persons that "I know how I got on the Grand Jury." "We are going to get the Mayor . . ." were not denied.

It could scarcely be assumed that this grand juror knew all the statutory requirements for choosing and impaneling a grand jury, and if he did the statement does not indicate that he was boasting about his knowledge of the law. When these statements are considered together with the other allegations concerning him, the conclusion is inescapable that his name was placed in the jury box, or that his name was placed upon the venire, in violation of some of the statutory provisions providing for the organization of grand juries. This has been held cause for sustaining a plea in abatement to an indictment. In the case of *State* v. *Bass* (1935), 210 Ind. 181, 1 N. E. (2d) 927, defendant was indicted for violation of the election laws. The defendant filed an answer in abatement alleging that at the time the jury commissioners at the first of the year deposited names

in the jury box, there were other names in the box that had been previously drawn by other jury commissioners; that the box had not been emptied nor had the previously drawn names been destroyed. In another specification it was further alleged that the jury box was insecure, and that the name of one William E. Hart, who was a jury commissioner, was twice drawn from the box, first for petit jury service, and later for grand jury service. It was further alleged that two of the members of the grand jury had been very active and interested in the calling of the grand jury and the investigation of the matters concerning which indictments were returned. The court held that the trial court properly overruled demurrers by the state to a plea in abatement stating these facts, and at page 184 said:

"From the earliest times rules and methods have been devised for drawing juries in an effort to insure the selection of disinterested jurors, and with a view to preserving the purity of the jury as an institution. Our statutory method of drawing juries was devised for the purpose of putting the selection beyond suspicion of advantage or favoritism. This result can be achieved only by a strict conformance to the requirements of the statute. The statute, section 4-3304, Burns' Ann. St. 1933, section 1267, Baldwin's 1934, clearly contemplates that no names shall be contained in the jury box, except the names taken from the tax duplicate by the jury commissioners to serve the courts for the current year. The facts alleged, which are by the demurrers admitted to be true, disclose that there were names in the jury box which should not have been there. It is alleged that there was opportunity for names to be inserted in the box by others than the jury commissioners; that the names of two who were active in seeking an investigation of the matters involved in the indictment were in the box. This may have been a mere coincidence, but it furnishes ground for suspicion, and the impartiality of juries must be above suspicion insofar as a compliance

with the statutory method of selection can make it so. It is for this reason that a grand jury which is not organized in accordance with the statutory requirements is held to be an unlawful jury, and an indictment returned by such a grand jury will be abated. *Stipp* v. *State* (1918), 187 Ind. 211, 118 N. E. 818; *Walter* v. *State* (1935), 208 Ind. 231, 195 N. E. 268."

Under the reasoning of the above case and the authorities cited, we are of the opinion that the boast of the grand juror, "I know how I got on the Grand Jury. We are going to get the Mayor . . . ," when considered with the other uncontradicted statements concerning him, are sufficient grounds upon which to interpose a proper valid plea in abatement to each indictment now returned, or any subsequent indictments so long as the said grand juror is a member of this grand jury.

The statute providing for challenging an individual grand juror before the jury is sworn provides in part as follows:

"A person held to answer a charge for a felony or misdemeanor may challenge an individual grand juror before the jury is sworn, for one or more of the following causes only:

". . .

"Seventh. That such a state of mind exists on his part in reference to the party charged that he can not act impartially and without prejudice to the substantial rights of the challenger.

"Eighth. That he holds his place in the grand jury by reason of the corruption of the officer who selected and impaneled the grand jury." § 9-811, Burns' 1942 Replacement (Acts 1905, ch. 169, § 97, p. 584).

This court has previously held that a plea in abatement on the ground that the grand juror was biased

and prejudiced against the defendant will not be permitted after the indictment has been returned. *Williams* v. *State* (1919), 188 Ind. 283, 123 N. E. 209; *Pontarelli* v. *State* (1931), 203 Ind. 146, 176 N. E. 696; *Mack* v. *State* (1932), 203 Ind. 355, 180 N. E. 279, 83 A. L. R. 1349.

But we feel that the particular facts alleged by relator far transcend a matter of bias and prejudice and constitute "malice, hatred and ill-will."

The oath administered by the court to the grand jury is significant. The statute requires:

"The following oath must be administered to the grand jury:

"'You and each of you, do solemnly swear or affirm that you will diligently inquire, and true presentment make, of all felonies and misdemeanors committed or triable within this county, of which you shall have or can obtain legal evidence; *that you will present no person through malice, hatred, or ill-will,* nor leave any unpresented through fear, favor or affection, or for any reward, or the promise or hope thereof, but in all your indictments, you will present the truth, the whole truth and nothing but the truth; that you will not disclose any evidence given or proceeding had before the grand jury. Those of you who swear, so help you God, and those of you who affirm, do solemnly affirm under the pains and penalties of perjury.'" (Italics added.) § 9-807, Burns' 1942 Replacement (Acts 1905, ch. 169, § 93, p. 584).

In *Joslyn* v. *The People* (1919), 67 Colo. 297, 302, 303, 184 P. 375, 7 A. L. R. 339, the court reasoned:

"Each grand juror is required to take an oath that he 'will present no person through malice, hatred or ill-will.'

"Section 3699, Revised Statutes of Colorado, 1908.

"If before taking such oath he has entered into an agreement or conspiracy to violate it, and as a

grand juror he is engaged in consummating that agreement or conspiracy, he is clearly in contempt and may be punished.

"*U. S.* v. *Kilpatrick,* 16 Fed. 765.

"The general rule is that neither the bias nor prejudice of a grand juror, nor his interest in a prosecution (other than a direct pecuniary interest) nor the fact that he has formed, or expressed an opinion will so disqualify him as to render invalid indictments returned by the grand jury.

"20 Cyc. 1300; *U. S.* v. *Belvin* (C. C.), 46 Fed. 381; *Comm.* v. *Woodward,* 157 Mass. 516, 32 N. E. 939, 34 Am. St. 302; *Rolland* v. *Comm.,* 82 Penn. St. 306, 22 Am. Rep. 758.

"But we know of no authority which goes so far as to hold that this would be true where jurors had determined, through malice or bribery, to violate their oaths. It is the difference between honest error, to which all men are subject, and that willful corruption which distinguishes the malefactor."

We feel constrained to hold that the allegations show that the grand juror at the time he was sworn, as well as through the time indictments were returned against relator and to the time of relator's offer to file his petition, did have for the relator malice, hatred and ill-will and that the relator was presented, as far as this grand juror was concerned, through malice, hatred and ill-will.

The grand jury is a powerful arm of the court. When properly used it can be a great force in helping protect the rights of society against those who would corrupt our goverment or jeopardize our rights to life, liberty and the pursuit of happiness by their antisocial and criminal acts. The grand jury operates in strict secrecy. None of its members can be subject to malicious prosecution. Its integrity should be above any reasonable suspicion. Its members

should act freely and fearlessly. But there is always great danger where great power is conferred. Under the growth of the grand jury system in England at one time it was considered a great protection against the oppression of the Crown. Today it should still continue a great protection for the individual citizen against improper prosecution. It should never be permitted to become an engine of oppression or an instrument of defamation.

It has always been a general principle under our legal system that for every wrong there should be a remedy. Our own Bill of Rights in Art. 1, § 12 of the Constitution of Indiana, provides:

> "All courts shall be open; and *every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.* Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." (Italics added.)

To say that a situation like this could exist with reference to such a grand jury without giving a defendant a right to his day in court on this issue would be a denial of legal justice for the defendant, and cast a cloud of distrust over our entire grand jury system. We hold that the relator does have his remedy by way of proper pleas in abatement to the indictments now returned against him, or any further indictments so long as the accused grand juror is a member of this grand jury.

The *ex parte* petition attempted to be filed by relator with the Vanderburgh Circuit Court alleged that the misconduct of the grand juror was "contemptuous to this court." The grand jury for the March Term was a part of the Vanderburg Circuit Court and the misconduct on the part of a grand juror tends

to hinder and delay justice as well as cast disrespect upon the court, and he therefore was in contempt of court. *Little* v. *The State* (1883), 90 Ind. 338; *Dale* v. *State* (1926), 198 Ind. 110, 117, 150 N. E. 78, 49 A. L. R. 647; *In re Summerhayes* (1895), 70 F. 769. In 12 Am. Jur. § 21, pages 403, 404, it is stated:

"The grand jury is a constitutional part of the court and any illegal or corrupt interference with it in the discharge of its duties or attempt by outside influence to control its action is contempt of court. Thus, it is contempt for one to attempt to induce grand jurors to indict persons not under arrest; to write or send a contemptuous and insulting letter to the grand jury; or to publish an article which tends to bring the jurors into disrepute and to embarrass and interrupt a legitimate investigation by them. The fact that the grand jury may have stopped its examination does not change the rule. If the jury is not barred from further investigation, but may renew its examination at any time, a person who publishes matter designated to hinder, obstruct, or influence its action is guilty of contempt. . . An officer charged with the duty of selecting and summoning grand jurors is guilty of contempt of court where he intentionally selects those who have prejudged the particular matter referred to them by the court and have done so solely from the standpoint of partisan politics. . . ."

However, the *ex parte* petition attempted to be filed by the relator did not formally charge a criminal contempt, since in criminal contempt such an action must be filed by the state and prosecuted by the prosecuting attorney. *Denny* v. *State* (1932), 203 Ind. 682, 182 N. E. 313; *Ex Parte Fennig, Ex Parte Whipple* (1939), 216 Ind. 298, 23 N. E. (2d) 678. In any event, a contempt action would not have of itself served to purge the grand jury of the misconduct of its accused member.

As we view the *ex parte* petition filed by relator, it was a proper attempt by him, seeking to act as *amicus curiae*, to bring to the court's attention grave ▮ misconduct on the part of one or more grand jurors.

". . . The term (*amicus curiae*) includes persons, whether attorneys or laymen, who interpose in, a judicial proceeding to assist the court by giving information or otherwise, . . ." 2 Am. Jur. 679, § 2.

It is the court's duty when such grave charges are brought to its attention to institute an investigation of the grand jury on its own motion. If any responsible person had attempted to inform the court in open court that some of the members of the grand jury were selling immunity or selling their votes to indict, could there be any question of the inherent right, power and duty of the court to investigate such a reflection upon the integrity of the grand jury as a part of the court? In the case of *Joslyn* v. *The People, supra,* a member of the grand jury brought to the court's attention a newspaper publication attacking the integrity of the grand jury. In that case the court said at pages 306, 307:

"In the instant case the foreman of the grand jury suggested that matter to the court. Upon that suggestion the court did institute a judicial inquiry, *as was his duty,* and if guilt had been found to attach to the jurors, or any of them, he would doubtless have promptly discharged such jurors, *as was also his duty.*" (Italics supplied.)

We feel that the law stated in this case is correct both upon principle and authority.

In this original action, however, the relator has claimed the right to invoke the extraordinary legal

remedy of mandamus. But in none of the cases cited by the relator was the *amicus curiae* a party to the appeal, nor have counsel cited to this court any case which holds one in the position of relator has a right to mandate the trial court to hold a hearing on the fitness of a grand juror after he was impaneled, sworn and instructed.

In the case of *Parker* v. *The State, ex rel. Powell.* (1892), 133 Ind. 178, 32 N. E. 836, 33 N. E. 119, the court held that the Attorney General of Indiana, requested by the Supreme Court to appear as *amicus curiae,* had no authority after the decision by the court, to petition for a rehearing, since neither he nor the state was a party to the appeal. See also 2 C. J. 1325, § 10; 3 C. J. S. 1051, § 3; 2 Am. Jur. 682, § 7.

We, therefore, hold that the relator by his *ex parte* petition to the Vanderburgh Circuit Court did not become a party to any cause, and so has no standing and is not entitled to bring this original action for alternate writ of mandate in this court.

The relator is not left without his remedy, since as decided in this opinion, he can file pleas in abatement to all indictments returned or which might be returned against him by the March Term of the grand jury. As to the future indictments relator fears, he has a remedy which may be delayed, but it would still be available and adequate. Mandamus will not be granted where there is another adequate remedy at law.

The alternate writ of mandate should be and the same is hereby vacated and annulled.

NOTE.—Reported in 73 N. E. (2d) 174.