John R. MOSELEY *v.* STATE Of Arkansas

CR 74-21                                      510 S.W. 2d 298

Opinion delivered June 10, 1974

*James R. Howard,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The Pulaski County grand jury returned two indictments against the appellant, John R. Moseley. The first charged Moseley with an illegal sale of drugs; the second charged him with perjury in his testimony before the grand jury. Separate trials, one to a jury and the other to the court, resulted in convictions and concurrent 10-year sentences. The principal issue here is whether the trial court should have quashed the indictments on the ground that Police Lieutenant W.E. Simpson was present when Moseley's testimony was taken by the grand jury.

According to the testimony of the foreman of the grand jury, Lieutenant Simpson had for some time worked jointly and closely with the grand jury's drug committee in investigating Moseley's alleged sale of drugs, one such sale being involved. The grand jury itself had devoted part of six or eight of its sessions to that particular investigation before Moseley himself appeared as a witness. A number of witnesses had already testified, including Lieutenant Simpson.

When Moseley testified before the grand jury Lieutenant Simpson was present and participated in the interrogation. The foreman stated that he conferred with Simpson while conducting the examination and that he motioned to Simpson once or twice to suggest that he propound questions to Moseley. A court clerk was also present, but the record indicates that neither the prosecuting attorney nor any of his deputies were present when Moseley testified. No one except the members of the grand jury remained in the room when the jurors entered upon their deliberations and voted upon the two charges.

Lieutenant Simpson's presence during the taking of Moseley's testimony was undeniably a violation of the

statute, which provides: "No person except the prosecuting attorney, and the witnesses under examination, are permitted to be present while the grand jury are examining a charge, and no person whatever shall be present while the grand jury are deliberating or voting on a charge." Ark. Stat. Ann. § 43-919 (Repl. 1964). The questions here are whether Officer Simpson's unauthorized presence was prejudicial and, if so, whether Moseley waived the error by consenting to it.

The State relies upon several of our cases holding that the presence of some third person in the grand jury room was not prejudicial. Our leading case is *Bennett v. State,* 62 Ark. 516, 36 S.W. 947 (1896), where an attorney went into the grand jury room with the prosecutor's consent and acted for him in examining witnesses. We found no prejudice, stressing the fact that the attorney acted in the prosecutor's stead and said nothing to influence the jury's finding. Even so, we emphasized the need for compliance with the statute, saying: "The importance of this provision cannot be overestimated, when we consider that the 'secrecy of the grand jury room, and the privity and impartiality of that inquest,' may prevent the presentment of any one 'through envy, hatred, or malice.' " Our later cases add nothing to the reasoning in *Bennett: Richards v. State,* 108 Ark. 87, 157 S.W. 141, Ann. Cas. 1915E, 231 (1913); *Tiner v. State,* 109 Ark. 138, 158 S.W. 1087 (1913); *Coon v. State,* 109 Ark. 346, 160 S.W. 226 (1913); *Bennett v. State,* 161 Ark. 496, 257 S.W. 372 (1923).

Those cases, however, do not touch upon the possibility of prejudice that exists in the case at bar. The statute contemplates that the prosecuting attorney will assist the grand jury, his knowledge of law and of the elements of a prima facie case being essential to the jurors' understanding of their duties. The prosecuting attorney, however, does not appear before the grand jury as a partisan, bent upon obtaining an indictment. In the actual trial of criminal cases it is as much the prosecutor's duty to protect the innocent as to convict the guilty. *Adams v. State,* 229 Ark. 777, 318 S.W. 2d 599 (1958). It would be illogical and unwise for him to act in a less disinterested manner in his role as advisor to the grand jury. Consequently, no prejudice is shown when another attorney acts for the prosecutor and, as we stated in the first *Bennett* case, says nothing to influence the finding of the grand jury.

Here the situation is markedly different. Lieutenant Simpson, a law enforcement officer, had been actively in charge of the investigation that led to the indictment. He had testified as a witness before the grand jury. He participated in the interrogation of Moseley. Unlike the prosecuting attorney, Lieutenant Simpson had no reason to be impartial in the matter and could hardly have been impartial. In such a situation the cases are unanimous, as far as we can find, in holding that the indictment should be quashed. *United States v. Carper,* 116 F. Supp. 817 (D.C.D.C., 1953); *United States v. Edgerton,* 80 Fed. 374 (D.C. Mont., 1897); *Culbreath v. State,* 22 Ala. App. 143, 113 So. 465 (1927); *Herrington v. State,* 98 Miss. 410, 53 So. 783 (1911). We agree with the court's declaration in the *Edgerton* case, *supra:* "There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in *Lewis v. Commissioners,* 74 N.C. 194 [1876], there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?"

There remains the possibility that Moseley waived the violation of the statute by consenting to it. According to the transcript of Moseley's testimony before the grand jury, he first took the oath and stated his name, address, and occupation. The foreman then said: "As you probably know, this Pulaski County Grand Jury is in official session today. We have with us members of the Grand Jury plus Mrs. Smith of the Fourth Court and Lieutenant Simpson with the Little Rock Police Department. Do you waive their presence here today? Do you have any objection?" Moseley replied: "No. No. I have no objections." Moseley's interrogation then took place.

We cannot conscientiously say that Moseley waived the violation of the statute. A waiver is an intentional relinquishment of a known right. *Lemm v. Sparks,* 230 Ark. 105, 321 S.W. 2d 388 (1959). There is nothing in the record to suggest that Moseley was fully aware of his rights. He was not accompanied by an attorney; the statute denies him that assistance in the grand jury room. There is no indication that he had had any previous experience with a criminal prosecution. (He had been the chief pharmacist for a veterans' hospital for 22

years, earning an annual salary of $22,980 when he is alleged to have sold amphetamine tablets for $10.) One supposes that Moseley would be nervous as a result of having been called before the grand jury in a criminal investigation of his conduct. His attitude would naturally be one of ready compliance with the foreman's suggestions.

As a layman, Moseley had no reason to know that Lieutenant Simpson's presence was a violation of law, potentially prejudicial to Moseley, and certainly had no reason to know that Simpson would interrogate him. The foreman apparently understood the situation, but he failed to explain the witness's rights. Had the prosecuting attorney or a deputy been present, an explanation might have been forthcoming, but seemingly the prosecutor's place was being taken by Lieutenant Simpson, who was actually Moseley's chief adversary. In the circumstances we cannot say that Moseley voluntarily and intentionally relinquished a known right.

Reversed and remanded, the indictments to be quashed.

CARLETON HARRIS, Chief Justice, dissenting. I disagree with the majority that this case should be reversed, for, in my opinion, Moseley waived any violation of the statute by consenting to the presence of Lieutenant Simpson. The majority opinion sets out the statement of the Grand Jury Foreman, together with the response of Mr. Moseley, and this exchange between the foreman and appellant took place at the outset of the proceedings.

This is not a case of one who is without formal education waiving a right; to the contrary, Mr. Moseley was a college graduate. Nor is it a situation where one who, because of extreme youth, would be unknowledgeable of the meaning of a waiver. Mr. Moseley was approximately 56 years of age at the time he appeared before the Grand Jury. Now, I submit that Mr. Moseley, an adult with a college education, when asked if he waived the presence of the police officer, was aware, by the very question asked by the foreman, that he had a right to prevent the presence of that police officer.

I would affirm the judgment.