ROBERT JOSEPH RENNERT *v.* STATE OF INDIANA.

[No. 674S128.  Filed June 19, 1975.]

*Bruce S. Cowen,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant Robert Joseph Rennert was indicted by the grand jury of Allen County which charged him with first degree murder in the death of Roger D. Hudson and second degree murder in the death of Daniel L. Wolfe. Appellant pleaded not guilty by reason of insanity. Jury trial resulted in verdicts of guilty as charged. Appellant was then sentenced to life imprisonment on conviction of first degree murder, and imprisonment for fifteen to twenty-five years on conviction of second degree murder. From the overruling of his motion to correct errors, appellant brings this appeal, presenting four issues for our determination.

## I.

Appellant's first assignment of error is the trial court's denial of his motion to dismiss and plea in abatement through which he sought to strike down the grand jury indictment "for the reason that there were unauthorized persons in the Grand Jury Room during the taking of testimony." When Jack James, an eighteen year old suspect in the case, appeared before the grand jury, he was accompanied by counsel and his parents. The record contains a stipulation that the parents "took no part in the proceedings," but James' attorney cross-examined him.

The law regarding the presence in the grand jury room of those unauthorized by statute, see Ind. Code § 35-1-15-10, Burns § 9-810 (1974 Supp.) [Clerk-Stenographer], Ind. Code § 35-1-15-23, Burns § 9-826 (1956 Repl.) [Prosecutor], was set forth by this Court in *State* v. *Bates,* (1897) 48 N.E. 2, 3, 148 Ind. 610, 612-13:

> "It is the rule that the presence of a stranger in the grand jury room during the investigation of a criminal charge, is not sufficient to abate an indictment, unless it appears that the person indicted was thereby injured in his substantial rights. *Shattuck* v. *State,* 11 Ind. 473; *Courtney* v. *State,* 5 Ind. App. 356; *State* v. *Clough,* 49 Me. 573, 576; *State* v. *Kimball,* 29 Iowa 267; *Bennett* v. *State,* 62 Ark. 516, 535, 36 S. W. 947.

"In *State* v. *Clough, supra,* on page 576, the court said: 'The mere fact that a stranger was present when an indictment was found, would not render it void. Though obviously proper, and highly important, that the proceedings of a grand jury should be in secret, one who is indicted cannot take any advantage of it if they are not. *Shattuck* v. *State,* 11 Ind. 473. The secrecy is not required for his benefit,— but otherwise. "One reason may be to prevent the escape of the party, should he know that proceedings were in train against him; and another may be, to secure freedom of deliberation and opinion among the grand jurors, which would be impaired if the part taken by each might be known to the accused." 1 Greenl. Ev., section 252.' Nor will any indictment be set aside on the ground of informalities or irregularities, when it is not shown that the defendant has been prejudiced in his substantial rights."

Unable to demonstrate actual prejudice flowing from the presence of the outsiders, appellant urges us to adopt a *per se* rule modeled after the one utilized in the federal system of presuming prejudice when unauthorized persons appar before the grand jury. We decline to do so. The rule of *Bates* requiring proof of prejudice by an appellant collaterally attacking his conviction preserves all due process rights of the individual while protecting the interests of society in maintaining convictions justly secured. Moreover, the rule requiring proof of prejudice in attacking grand jury proceedings has been a workable one. *See e.g., Jaudon* v. *State,* (1970) 255 Ind. 114, 262 N.E.2d 851. In the absence of any prejudice to the appellant, there was no error in the overruling of his motion to dismiss and his plea in abatement.

## II.

Appellant challenges the overruling of his objection to the admission of State's Exhibit No. 37. That exhibit was a letter, written by appellant while in jail, and addressed to one Frank Craig, c/o Defiance Crescent News, Defiance, Ohio. Apparently intended to be published as a letter to the editor, it bears the salutation, "Dear Society." The letter recounts a homosexual attack upon the appellant when he was a youth and

continues by describing a more recent molestation when the appellant was "too drugged to fight." In an attempt to "escape the thought of what happened," appellant took some "acid." The drugs backfired, however, and appellant killed his molester (Hudson) and another man who was present. The letter then concluded with a plea not to take drugs. Counsel's objection at trial to the admission of the letter reads:

> MR. FINK: "Your Honor, at this time the defense would object to the introduction of State's Exhibit 37 on these following grounds, that the obtaining of the document in question, the exhibit in question, I think is in violation of certain Constitutional rights of this defendant; namely, the Ninth, Fourteenth and Fifth Amendments to the Constitution of the United States."

Appellant's motion to correct errors sought correction:

> "For an uncorrected error of law occurring in the trial proceedings in that the trial court, over objection, admitted into evidence State's Exhibit No. 37, same being a letter written by the defendant from the jail and confiscated by the jail authorities, thus violating the defendant's rights under the Constitution of the United States."

And appellant argues in his brief:

> "Thus, the reading and confiscation of the letter of the defendant herein violated his constitutional rights under the first and fourteenth amendments of the Constitution of the United States, was an illegal seizure of evidence, and therefore said evidence should have been excluded as fruits of a poisoned tree."

Appellant's fourth amendment claim, framed in terms of "an illegal seizure," is tenuous at best. Undoubtedly, there is a legitimate state interest in searching a prisoner's mail for contraband. So, too, the state may justify reading the correspondence to determine whether an escape attempt is impending. Appellant had notice of the jail policy requiring such inspection. The letter was written on stationery purchased from the jail commissary and bore the following printed statement:

> "All Inmates' mail is Inspected By Jail Personnel for contraband . . . All correspondence must be in English, otherwise, letters will not be delivered."

We assume, without deciding, that appellant consented to having his mail examined. Hence, the nub of appellant's claim appears to be that a lawful search which uncovers incriminating evidence unrelated to the purpose of the search becomes an illegal seizure of defendant's papers. The argument appears to be without merit. *See Harris* v. *U.S.*, (1968) 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067 [registration card discovered while police were "securing" inpounded vehicle admissible]. It is possible that appellant seeks to assert no more than a general claim to privacy under the fourth amendment. In view of the admonition printed on the stationery upon which appellant wrote his letter, appellant would be hard pressed to show any justifiable expectation of privacy in the contents of his letter. *See Katz* v. *U.S.*, (1967) 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576. We decide none of these possible fourth amendment arguments. No fourth amendment claim was presented at trial or in appellant's motion to correct errors, and we will not consider it on appeal. *Stephens* v. *State*, (1973) 260 Ind. 326, 295 N.E.2d 622.

Appellant bases his first amendment argument on the recent decision of *Procunier* v. *Martinez*, (1974) 416 U.S. 396, 94 S. Ct. 1800, 40 L. Ed. 2d 224. *Procunier* sets forth standards for determining whether prison rules re censorship of mail infringe, without adequate justification, expression protected by the first amendment. *Procunier* also affirmed that minimum procedural safeguards are required when letters are censored or delivery refused. *Procunier* was argued on December 3, 1973, the same day the jury returned its verdicts against appellant. Appellant was sentenced December 28, 1973. His motion to correct errors was overruled on March 29, 1974. *Procunier* was handed down April 29, 1974. Appellant's brief presents no first amendment attack upon any rule of the Allen County jail, but merely asserts an abridgment of his right to know that his letter would not be delivered and the reason for such interference. However,

like the fourth amendment arguments, this first amendment claim is raised for the first time on appeal, and we will not consider it.

Appellant's objection at trial, premised upon the fifth, ninth and fourteenth amendments, but not elaborated upon in appellant's brief, appears to raise the same question of infringement of the right to privacy argued on appeal under the first and fourth amendments but not presented to the trial court. Since the United States Constitution does not explicitly mention a right to privacy, each of these amendments has had various aspects of privacy ascribed to it. *See Roe* v. *Wade,* (1973) 410 U.S. 113, 152-54, 93 S. Ct. 705, 35 L. Ed. 147, 176-78. In the absence of further explication in appellant's brief of the objection presented at trial, we believe there was no unjustifiable infringement of appellant's right to privacy, as that right is grounded in the fifth, ninth and fourteenth amendments. The letter was properly admitted.

## III.

Appellant urges that insufficient evidence of premeditation was presented to warrant his conviction of first degree murder in the death of Roger D. Hudson. Specifically, appellant asserts that the evidence is insufficient because the state's witness was not in the vehicle when the shooting took place and "in his [appellant's] drugged condition any number of rationales can be put forward to explain what happened in the car besides premeditated malice."

Premeditation, as the bench mark of first degree murder means "thought of beforehand" for some length of time however short. Perkins, in his treatise on *Criminal Law* notes at page 29 that "Those who first employed this word . . . undoubtedly had in mind a malicious scheme thought out well in advance of the fatal act itself."

Ordinarily an appeal challenging sufficiency of the evidence of premeditation frames the question in terms of an asserted lack of time prior to the fatal act in which the deliberative thought could have taken place. *See e.g., McCurdy* v. *State,* (1975) 263 Ind. 66, 324 N.E.2d 489. In that situation, the applicable standard is found in *Everett* v. *State,* (1935) 208 Ind. 145, 150, 195 N.E. 77, 79:

> "Where the homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneous as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree."

Appellant's objection to the finding of premeditation is apparently based upon a misconception that premeditation and intent *must* be "as instantaneous as successive thoughts." Here, the evidence before the jury more readily fits the classical conception of premeditation discussed by Perkins. Evidence of the decedent's alleged homosexual assault upon the appellant was before the jury, as was appellant's handwritten statement: "I couldn't get my mind off of it for two days so I thought acid would help me escape the thought of what happened. Now that man and another man are dead because I shot them." The jury also heard testimony that appellant asked his friend, Jack James, where James' gun was, shortly after appellant arranged to have the decedent drop by. The murder weapon was identified as belonging to Jack James.

It is a fundamental premise that we do not reweigh the evidence on appeal. Rather, we must ascertain whether there exists any substantial evidence of probative value from which the jury could have inferred appellant's guilt beyond a reasonable doubt. If such evidence exists, we must affirm. *King* v. *State,* (1968) 249 Ind. 699, 234 N.E.2d 465. In this case sufficient evidence was presented from which the jury could conclude that appellant's killing of Roger Hudson was premeditated.

## IV.

Appellant assigns as error the overruling of his objection to certain language embodied in Instruction No. 4 on malice. That instruction reads:

> "Malice, in law, and as used in the statute defining murder, has a technical meaning, including not only anger, hatred or revenge, but every unlawful and unjustifiable motive. It is not confined to ill-will towards one or more individual persons, but is used and intended to denote an action growing from any wicked or corrupt motive—a thing done with bad or malicious intent—where the act has been attended by such circumstances as to carry in them the plain indication of a heart without regard for social duties, and fatally bent on mischief; and, therefore, malice may be implied from any deliberate and cruel act against another, however sudden."

Appellant's counsel made the following objection to this instruction:

> MR. FINK: "The defendant objects to the giving of State's Instruction Number 4 in the second sentence which states, 'It is not confined to ill-will towards one or more individual persons, but is used and intended to denote an action growing from any wicked and corrupt motive—a thing done with bad or malicious intent . . .' The defendant objects to the use of the words, 'A thing done with bad or malicious intent . . .' because it does not refer to an act, and in the case at hand with what the Jury and the Indictment is faced with is with killing. And, therefore, a reference to a 'thing', which does not reflect on the act of killing, makes the instruction incorrect and prejudicial to the rights of the defendant."

Undoubtedly, the word "thing" in the English language is often employed by a writer or speaker who lacks the ability to articulate his thoughts more precisely. The usage of the word "thing" in the context of Instruction No. 4, however, is not an example of imprecise usage. "Thing" is used as a noun synonymously with the word "action" in the same sentence. An acceptable definition of the word "thing" appearing in *The American College Dictionary* (Random House, 1958 ed.) is "6. an action, deed, or performance."

282

Moreover, an instruction on malice virtually identical to this one—and containing the phrase "a thing done with bad or malicious intent"—was approved by this Court in *Harris* v. *State,* (1900) 155 Ind. 265, 58 N.E. 75. There was no error in the overruling of appellant's objection to Instruction No. 4.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Givan, C.J., Arterburn and Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 329 N.E.2d 595.