STATE of Indiana, Appellant
(Plaintiff below),

v.

Steven M. BOWMAN, Appellee
(Defendant below).

No. 781S196.

Supreme Court of Indiana.

July 24, 1981.

Theodore L. Sendak, Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellant (plaintiff below).

James L. Brand, Michael J. Tosick, Free, Brand, Tosick, Van Winkle & Allen, Greenfield, for appellee (defendant below).

ON PETITION TO TRANSFER

HUNTER, Justice.

This cause is before us on the petition to transfer of Steven Bowman, wherein he seeks review of the Court of Appeals' opinion found at *State v. Bowman*, (1981) Ind. App., 417 N.E.2d 360. We hereby grant transfer, vacate the decision of the Court of Appeals, and reinstate the judgment of the trial court.

A Hancock County grand jury indicted Steven M. Bowman for involuntary manslaughter, Ind.Code § 35-42-1-4 (Burns 1979 Repl.), criminal recklessness, Ind.Code § 35-42-2-2(b) (Burns 1979 Repl.), and reckless homicide, Ind.Code § 35-42-1-5 (Burns 1979 Repl.). The charges stemmed from Bowman's involvement in a fatal automobile accident in Hancock County on August 20, 1978.

Bowman filed a motion to dismiss the three-count indictment. He based his motion on the fact that unauthorized persons (two police officers) were present during the grand jury proceedings. Following an evidentiary hearing, the trial court granted Bowman's motion and dismissed the indictment. The court subsequently denied the state's motion to reinstate the charges and its motion to correct errors. The state appealed and presented the following issue for consideration by the Court of Appeals:

> Whether the unauthorized presence of two police officers during the grand jury proceedings prejudiced Bowman's substantial rights and warranted dismissal of the indictment.

The Court of Appeals concluded that no prejudice to Bowman's substantial rights was demonstrated by the evidence. The trial court was consequently ordered to reinstate the indictment.

As the Court of Appeals noted, there is no question that the presence of the police officers during the grand jury proceedings was unauthorized and improper. Ind.Code § 35-1-15-23 (Burns 1979 Repl.); Ind.Code § 35-1-15-10 (Burns 1979 Repl.); Ind.Code § 35-1-15-16 (Burns 1979 Repl.); *Fair v. State,* (1977) 266 Ind. 380, 364 N.E.2d 1007; *Rennert v. State,* (1975) 263 Ind. 274, 329 N.E.2d 595; *State v. Bates,* (1897) 148 Ind. 610, 48 N.E. 2. *Shattuck v. State,* (1858) 11 Ind. 473. As the state has argued, however, that fact by itself does not warrant dismissal of the indictment. For as this Court reiterated the rule in *Fair v. State, supra* :

> "It is the rule that the presence of a stranger in the grand jury room during the investigation of a criminal charge is not sufficient to abate an indictment, unless it appears that the person indicted was thereby injured in his substantial rights." 266 Ind. at 390, 364 N.E.2d at 1012 quoting *State v. Bates,* (1897) 148 Ind. 610, 48 N.E. 2.

To determine if the trial court erred in ruling that Bowman's substantial rights were prejudiced by the unauthorized presence of the two police officers, we must examine the evidence produced at the hearing on the motion to dismiss and the record of the grand jury proceedings.

The evidence reveals that the officers who attended the grand jury proceedings were James Bradbury, a Hancock County Deputy Sheriff, and Paul Weiler, an Indiana State Police Officer. Bradbury had been called to the scene of the automobile accident. He enlisted Weiler's help in a continuing investigation of the events and circumstances surrounding the accident; the investigation eventually culminated in the decision to convene a grand jury to determine whether Bowman should be prosecuted for his role in the mishap.

Prior to the grand jury proceedings, the two officers interviewed most of the witnesses who testified before the grand jury. Both Bradbury and Weiler discovered they were acquainted with many of the witnesses. Bradbury knew over half of them, several of whom he counted as friends. Weiler stated that he was personal friends with "some," and had a "speaking acquaintance" with a "large percentage" of the witnesses.

Weiler was the first witness called to testify before the grand jury. He appeared in civilian dress and was introduced as the state police investigator who had assisted Bradbury in the investigation of the auto accident at issue. Following his testimony, the prosecutor requested permission from the grand jury for Weiler to remain throughout the proceedings:

> BY MR. DOBBINS: "Okay, let the record show that I have requested the Grand Jury, permission to have Paul Weiler present during further investigation of other witnesses in this same cause does the Grand Jury have an opinion at this time, whether or not Mr. Weiler will be permitted to assist me in the case?
> "Is that the consensus of the Grand Jury?
> "As I understand it is your desire that he may be present keeping in mind that he is under oath not to disclose any evidence that may be heard here."

Bradbury was the second witness called to testify. He also appeared in civilian clothes and was introduced as the deputy sheriff who investigated the accident. Likewise, at

the close of his testimony, the prosecutor obtained permission from the grand jury for Bradbury to remain in the courtroom. The record reads:

> BY MR. DOBBINS: "Jury Panel, Mr. Bradbury has indicated that he would like to be present during the questioning of Scorchy Woods, I'd request permission in his behalf to be present at that time. Are there any objections, does everybody consent to have him present. He is under oath, so that would apply. Okay."

The evidence reveals Bradbury remained beyond Scorchy Woods's testimony for the duration of the remaining witnesses' testimony.

The reason for the officers' continued presence is unclear. The prosecuting attorney explained at one point that the two men were present to be informed of the evidence so as to facilitate their "continuing investigation"; at another juncture, he stated that they were merely present to "assist" him throughout the proceedings. Weiler indicated he was present to "assist" the prosecutor; Bradbury stated only that prior to the proceedings, he and the prosecutor had discussed the possibility of him remaining in the courtroom. Both acknowledged that they "probably" used information garnered at the proceedings to facilitate their continuing investigation.

The evidence indicates that throughout the remaining witnesses' testimony, the two officers sat side-by-side at the prosecutor's table, in full view of the jury and witnesses. Bradbury indicated that they were seated approximately ten feet from the nearest grand juror; a juror, however, testified that the two men were seated only two feet from the nearest juror. From their position, they occasionally handed exhibits to the prosecutor. On several occasions, they conferred with him on testimony and questioning of witnesses. Communications between the prosecutor and the policemen were conducted in hushed tones or through notes. The jurors indicated they did not overhear any of these conversations.

The jurors testified they fully understood that the officers were the chief investiga-

tors of the auto accident at issue. They stated that they would sometimes refer questions to the officers via the prosecutor, who would in turn relay the answers to the jury. These exchanges, according to the testimony of the jurors, sometimes occurred after witnesses had completed their testimony and left the courtroom.

Both Bradbury and Weiler testified that they did not take notes during the testimony; a grand juror, however, testified that the two men did take notes. Finally, it was uncontradicted that the officers did not put questions directly to the witnesses and that the two men, as well as the prosecutor, were not present while the jury deliberated.

At the evidentiary hearing on Bowman's motion to dismiss, each of the six jurors stated that the presence of the officers had not influenced their ultimate decision. One juror equivocated; she stated she did not know whether their presence had affected her judgment in some way.

Based on this evidence, the trial court found the unauthorized presence of the two police officers had prejudiced the substantial rights of Bowman. As the Court of Appeals recognized, the trial court's determination involves a question of fact. Consequently, it can be set aside only if clearly erroneous as unsupported by the facts and circumstances together with any reasonable inferences to be drawn therefrom. *Lee v. State,* (1979) Ind., 392 N.E.2d 470.

Viewed from this perspective, the unusual circumstances present here and the reasonable inferences that can be drawn therefrom support the trial court's conclusion. Were it otherwise, the purpose as well as the letter of the statute violated would be vitiated.

In *Rennert v. State,* (1975) 263 Ind. 274, 329 N.E.2d 595, this Court noted the reasons for the statutory limitation on those persons who may be present at a grand jury proceeding:

> "The secrecy is not required for his [the subject's] benefit, but otherwise. 'One reason may be to prevent the escape of the party, should he know that proceed-

ings were in train against him; *and another may be to secure freedom of deliberation and opinion among the grand jurors, which would be impaired if the part taken by each might be known to the accused.'* " 263 Ind. at 276, 329 N.E.2d at 597, quoting *State v. Bates,* (1897) 148 Ind. 610, 612–13, 48 N.E.2d 2, 3 (emphasis added).

*See also, State ex rel. Reichert v. Youngblood,* (1947) 225 Ind. 129, 73 N.E.2d 174. Freedom of deliberation and opinion is equally susceptible to impairment by the presence of the chief investigators whose work has prompted the proceedings.

 Here, the police officers were not only the chief investigators of the auto accident, but also friends and acquaintances with most of the witnesses. These circumstances alone raise the specter of proceedings wherein the witnesses' testimony and jury's role and consideration of evidence is not completely free from partial influences, however subtle. That specter is further aggravated here by the location of the police officers, the prosecutor's conferences with them, their handling of exhibits, and their role as periodic sources of information requested by the jury at the close of witnesses' testimony. Based on human experience, it is wholly reasonable to infer that the totality of these circumstances did influence the course of the proceedings in a manner adverse to Bowman's substantial rights.

We note that the Court of Appeals observed that grand jury proceedings are merely inquisitorial in nature and are cloaked in secrecy for the benefit of the state, rather than the subject. While those observations are accurate, it cannot be doubted that an indictment carries with it significant import for the indicted's life, liberty, and reputation.

 That is not to say that the subject of a grand jury investigation should be accorded the full panoply of constitutional rights due a criminal defendant, but rather to emphasize that violations of the letter of statutes governing grand jury machinations are viewed by this Court with a jaundiced

eye. We reiterate our adherence to the long standing rule that the presence of unauthorized persons during grand jury proceedings does not warrant *per se* the dismissal of an indictment. At the same time, where the minimum protection afforded by statute—that an indictment will follow only from impartial consideration in a neutral and detached atmosphere—is violated, the indictment must fall.

That result is necessitated not merely as a safeguard for citizens, but also to promote the principles which form the foundation of the grand jury system. Its original purpose was to provide a check against oppressive prosecution by the state. *State ex rel. Reichert v. Youngblood, supra.* Its secret and non-adversarial nature, of course, have made the grand jury system a target of critics and skeptics who challenge its lack of due process and potential for abuse of power. Chief Justice Emmert recognized these aspects of the system when he wrote in *State ex rel. Reichert v. Youngblood, supra* :

"The grand jury is a powerful arm of the court. When properly used it can be a great force in helping protect the rights of society against those who would corrupt our government or jeopardize our rights to life, liberty and the pursuit of happiness by their antisocial and criminal acts. The grand jury operates in strict secrecy. None of its members can be subject to malicious prosecution. Its integrity should be above any reasonable suspicion. Its members should act freely and fearlessly. But there is always great danger where great power is conferred. Under the growth of the grand jury system in England at one time it was considered a great protection against the oppression of the Crown. Today it should still continue a great protection for the individual citizen against improper prosecution. It should never be permitted to become an engine of oppression or an instrument of defamation." 225 Ind. at 141–42, 73 N.E.2d at 179.

To these ends, we must implement the rule requiring proof of prejudice in a manner

which both preserves the limited "rights of the individual while protecting the interests of society in maintaining convictions justly secured." *Rennert v. State*, (1975) 263 Ind. at 276, 329 N.E.2d at 597.[1]

We do not confront here the unauthorized presence of a fellow suspect's parents (*Rennert v. State, supra*) or a stenographer (*State v. Bates, supra*). In the circumstances present here, we cannot say that the trial court, who alone had the opportunity to judge the credibility and demeanor of witnesses, reached a conclusion which is clearly erroneous. *Compare, State v. Hardy*, (1980) Ind.App., 406 N.E.2d 313. Other jurisdictions which have confronted similar circumstances have reached an identical result. *Moseley v. State*, (1974) 256 Ark. 716, 510 S.W.2d 298;[2] *Culbreath v. State*, (1927) 22 Ala.App. 143, 113 So. 465; *Herrington v. State*, (1911) 98 Miss. 410, 53 So. 783.

The decision of the Court of Appeals is vacated and the trial court's judgment of dismissal is affirmed.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents and would deny transfer.

---

1. The Court of Appeals indicated that prejudice requires "proof of a causal connection between the presence of unauthorized persons ... and the result reached." Consequently, based in large part on the testimony of the grand jurors that their ultimate decision was unaffected by the officer's testimony, the trial court was reversed. Influence works in subtle ways; we do not regard the opinion of the six laymen as *conclusive* of the question before us. Not only was the unauthorized presence of the officers detrimental to the proper atmosphere, but also imposed on the witnesses' opportunity to freely express opinions and beliefs. The intangible factors which accompany an unauthorized person's presence in the courtroom are neither readily discernible nor measurable; for that reason, the proceedings are best conducted in accordance with the governing statutes.

2. Quoting *United States v. Edgerton*, (D.C. Mont.1897) 80 F. 374, the Arkansas Supreme Court explained the rationale for their decision:

 "There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in *Lewis v. Commissioners*, 74 N.C. 194 [1876], there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?" 256 Ark. at 719, 510 S.W.2d at 300.