In re the Report and Recommendation Issued by the ELKHART GRAND JURY, JUNE 20, 1980.

STATE of Indiana, Respondent-Appellant,

v.

James FITZGERALD, Petitioner-Appellee.

No. 3–481A97.

Court of Appeals of Indiana, Third District.

April 13, 1982.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, Michael A. Consentino, Pros. Atty., Steven H. Kruis, Deputy Pros. Atty., 34th Judicial Circuit, Elkhart, for respondent-appellant.

Stephen R. Bowers, Elkhart, for petitioner-appellee.

GARRARD, Judge.

This appeal concerns the propriety of a "report" issued by a grand jury duly convened in Elkhart County. Upon the completion of its investigations the grand jury reported that it had no indictments to hand down but that it wished to make a public statement which concerned James Fitzgerald, the petitioner below. The court granted the request and the grand jury filed a "report" in which it asserted that Fitzgerald may have committed a misdemeanor in 1976 but action thereon was barred by the applicable statute of limitations, that they found insufficient evidence to indict for other offenses, and that they felt Fitzgerald should be discharged from the Elkhart City Police Department.[1]

Fitzgerald then petitioned to have the report expunged. His motion was granted and the state perfected this appeal. The issue thus presented is the propriety of a grand jury issuing a critical or condemnatory report concerning persons whom it fails to indict. While acknowledging that it lacks such power generally, the state argues that the power of the grand jury to inquire into official misconduct by public officers justifies such reports where the subject is a public officer. For purposes of our discussion let us assume that Fitzgerald was a

public officer within the meaning of the statute.

We note at the outset that there is a divergence of opinion among the states concerning such reports. Typical of those permitting such commentary is In re. Camden Co. Grand Jury (1952), 10 N.J. 23, 89 A.2d 416. There the court noted the common law right of English grand juries to make presentments of matters of public concern unaccompanied by indictments and the importation and "steadily exercised" use of that practice under the state's three successive constitutions. In further justification the court observed:

> "What is not known and understood is likely to be distrusted. What cannot be investigated in a republic is likely to be feared. The maintenance of popular confidence in government requires that there be some body of laymen which may investigate any instances of public wrongdoing.
>
> \*   \*   \*   \*   \*   \*
>
> The grand jury provides a readily available group of representative citizens of the county empowered, as occasion may demand, to voice the conscience of the community. There are many official acts and omissions that fall short of criminal misconduct and yet are not in the public interest. It is very much to the public advantage that such conduct be revealed in an effective, official way . . . ."

89 A.2d 943, 944.

The opposing view was stated in Wood v. Hughes (1961), 9 N.Y.2d 144, 212 N.Y.S.2d 33, 173 N.E.2d 21, where the court noted that the issue was neither that public officers should be held to high standards of performance nor that free and open criticism of the conduct of public office is part of the lifeblood of our democracy. The issue, said the court, was the process or procedure to be employed in charging and judging such officials. The court concluded that grand juries should not make such

---

1. Hereafter our reference to a grand jury "report" means a critical or condemnatory report issued in the absence of any indictment.

reports because such practice would tend (1) to condemn public officials according to the grand jury's own standards of right and wrong; (2) to administer punishment by public censure leaving the accused without means to vindicate himself; and (3) to provide the means for unfair partisan political action. (On the latter point *see, e.g., State ex rel. Reichert v. Youngblood* (1947), 225 Ind. 129, 73 N.E.2d 174.)

We need not again recount the history and purpose of the grand jury in Indiana except to note that it is constitutionally subject to the will of the legislature.[2]

Thus, while in *State ex rel. Reichert v. Youngblood* (1947), 225 Ind. 129, 73 N.E.2d 174 our Supreme Court observed that the courts might look to common law principles in resolving procedures not covered by the grand jury statutes,[3] the court plainly stated in *Coons v. State* (1922), 191 Ind. 580, 134 N.E. 194, 197 that in Indiana the grand jury has no common law rights or privileges.

In *Coons* the grand jury had issued a report in which it criticized and called for the resignation of the circuit judge. On the basis of the report the trial court found the grand jurors in contempt. This finding was upheld on appeal against the assertion that the report was privileged.

The *Coons* court then analyzed the grand jury's action in terms of the Indiana statutes. It noted that the oath taken by grand jurors (Acts of 1905, Ch. 169, § 93)[4] required them to make true presentments of all felonies and misdemeanors and held that under our usage "presentment" and "indictment" are to be used interchangeably. Stating that a grand jury was not authoriz-

ed by the statutes to charge a public officer with the commission of a felony by "a so-called report," the court continued:

"The statutes do not provide that the grand jury make reports to the court of crimes and misdemeanors of public officials or of other citizens. It is ... required to examine into all felonies and misdemeanors, and to make a true presentment in each of such cases, if, in the opinion of the grand jury ... such felony or misdemeanor has been committed .... That part of the final report of the grand jury as set forth in the [report] was not contemplated in law. If the grand jury, in making investigation of crimes and misdemeanors ... conclude[s] from the evidence taken that a presentment in the form of an indictment should not be made ... it is not their duty or privilege to make accusations in the form of a report based on such evidence."

134 N.E. at 197.

The state urges that IC 35–1–15–21 permits a different result.[5] It points out that the statute expressly authorizes inquiry into official misconduct of public officers. It also urges that unless the statute is construed to authorize "reports" concerning official misconduct of public officers, the provision is redundant and meaningless since the grand jury is otherwise expressly authorized to inquire into criminal charges. We disagree.

The statute as drawn addresses the *order* of inquiry by the grand jury. First, those imprisoned on a criminal charge and not yet indicted; second, those under bail and not

---

**2.** The account is contained in *State ex rel. Pollard v. Criminal Ct. of Marion Co.* (1975), 263 Ind. 236, 329 N.E.2d 573.

**3.** 73 N.E.2d 177. The court determined that the accused could challenge the propriety of the grand jury by a plea challenging the indictment.

**4.** The statute remains substantially the same today. *See* IC 35–1–15–7.

**5.** IC 35–1–15–21 states:
  "The order of inquiry made by the grand jury shall be as follows:

  (1) Into the case of every person imprisoned in the county jail on a criminal charge, and not indicted.
  (2) Into the case of every person under bail in said county to answer a criminal charge, and not indicted.
  (3) Into official misconduct of public officers, and into any charge of bribery or intimidation preferred against any such officer.
  (4) Into the condition and management of the jails and poorhouses in the county.
  (5) Into violations of statutes generally, of which the court has jurisdiction."

indicted; and third, official misconduct of public officers who, by implication, have neither been jailed or let to bail for a criminal charge. Therefore, since the statute prescribes the order in which the grand jury shall conduct its business, it is not surplusage or a redundancy to expressly mention the misconduct of public officials.

Moreover, the statute was in existence in substantially the same form when *Coons* was decided and its presence was alluded to by the court in reaching its decision. *See* Acts of 1905, Ch. 169, § 107.[6]

We therefore conclude that our Supreme Court's decision in *Coons* is authority for the proposition that grand juries in Indiana are not empowered to issue reports criticizing the conduct of public officers that does not constitute an indictable offense. Moreover, we find that view is supported in reason on the bases discussed in *Wood v. Hughes* (1961), 9 N.Y.2d 144, 212 N.Y.Supp. 33, 173 N.E.2d 21, *ante.*

We therefore affirm the judgment of the trial court.

HOFFMAN, P. J., and STATON, J., concur.

---

**6.** The 1905 statute provided:

"Sec. 107. The order of inquiry made by the grand jury shall be as follows:

First. Into the case of every person imprisoned in the county jail on a criminal charge, and not indicted.

Second. Into the case of every person under bail in said county to answer a criminal charge, and not indicted.

Third. Into wilful and corrupt misconduct in office of public officers of every description, and into any charge of extortion preferred against any such officer.

Fourth. Into the condition and management of the public prisons and poor houses in the county.

Fifth. Into violations of the criminal laws of this state generally, of which the court has jurisdiction."