Eugene Owen **MITCHELL**, Petitioner,

v.

Norman A. **CARLSON** et al.,
Respondents.

No. 75–268–C3.

United States District Court,
D. Kansas.

Dec. 9, 1975.

Mary K. Briscoe, Asst. U. S. Atty., Topeka, Kan., for respondents.

MEMORANDUM AND ORDER

ROGERS, District Judge.

Petitioner, Eugene Owen Mitchell, has lodged with the Clerk of this Court a petition for injunctive and declaratory relief relying upon several civil rights statutes, 42 U.S.C. §§ 1983, 1986, and the declaratory judgment statutes, 28 U.S.C. §§ 2201–2202. In addition, the petitioner requested the submission of the case to a three-judge court pursuant to 28 U.S.C. § 2281. Accompanying the petition is a request for leave to proceed *in forma pauperis* supported by the requisite affidavit and document from an official of the United States Penitentiary at Leavenworth, Kansas. The Court, after examining the pleadings, makes the following findings and orders.

Petitioner is currently incarcerated in the United States Penitentiary at Leavenworth, Kansas, by or under color of the authority of the United States pursuant to the sentence imposed by the United States District Court for the Eastern District of Michigan. Petitioner is not attacking his order of judgment and commitment.

Petitioner's grievance stems from his efforts to serve as a "jailhouse lawyer" for a fellow inmate at the Leavenworth penal institution by preparing an appellate brief for submission to the Seventh Circuit Court of Appeals. His "representation" included the filing of an appearance of counsel form with that court. After this representation began at the Leavenworth facility, the petitioner's "client" was transferred to the United States Penitentiary at Terra Haute, Indiana on June 4, 1975. Thereafter, the petitioner sent a motion for a temporary

restraining order to the Seventh Circuit Court of Appeals and forwarded a copy of the same to his "client." The petitioner mailed the copy from the Leavenworth institution sometime after June 10, 1975. On June 27, 1975, petitioner was called before his caseworker who produced the letter petitioner believed had been delivered to his "client" in the Terra Haute facility. The petitioner, apparently in an effort to substantiate the delay of his mail occasioned by the prison authorities, requested his caseworker to initial and date the envelope. The caseworker refused in reliance upon Bureau of Prisons Policy Statement No. 7300.1A. This policy statement was reissued without substantial modification at the United States Penitentiary at Leavenworth, Kansas, under the identification number of L–7300.1B. When the Court received the petitioner's pleadings, it did not contain Exhibit "A" referred to therein. Upon the Court's request, the petitioner provided it with a copy of Exhibit "A", the motion filed with the Seventh Circuit Court of Appeals and the document underlying the petitioner's grievance. The copy of the motion, wherein petitioner deems himself amicus curiae for his "client", appears to be a motion to suspend a pending appeal filed for the "client" by petitioner. The Court delayed its consideration of the petitioner's claims until the pleadings were made complete.

In support of his petition, the petitioner raises three bases for relief:

(1) Petitioner . . . has been deprived of his right to correspond freely with other prisoners when such communication is essential to the conduct of a lawsuit, as guarranteed (sic) by the First Amendment of the United States Constitution.

(2) Petitioner['s] . . . personal mail has been censored unlawfully, arbitrarily and directly in conflict with his First Amendment Rights.

(3) Petitioner . . . claims that the Bureau of Prisons Policy Statement, No. 7300.1A is unconstitutional and violates his first amendment rights.

As relief, petitioner seeks a declaratory judgment, issuance of an injunction and compensatory and punitive damages.

■ In *Pope v. Daggett*, 350 F.2d 296 (10th Cir. 1965), the court stated, "We do not have the power through injunctive process to supervise the conduct of a federal penitentiary or its discipline. That power lies in the Attorney General and the Bureau of Prisons. Control over a prisoner's mail is basically an administrative function." While this statement relates to the utilization of injunctions, it is typical of the attitude federal courts have taken regarding any undue intrusion into administrative functions, particularly those within penal institutions. See *Procunier v. Martinez*, 416 U.S. 396, 404–05, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). In light of this attitude, federal courts have consistently required inmates to exhaust the available administrative remedies before a petitioner's grievance is considered for fear of dictating policy in an area courts are ill-equipped to govern. *Rivera v. Toft*, 477 F.2d 534 (10th Cir. 1973). The petitioner here alleges no effort to present his grievance to the appropriate penal authorities or agencies. See Bureau of Prisons Policy Statement No. 2001.6A. Accordingly, this Court must dismiss the petitioner's pleadings but would do so without prejudice to allow the petitioner to refile his claim after proper exhaustion. While normally this Court would allow the petitioner leave to amend his pleadings to allege proper exhaustion of administrative remedies, an evaluation of the merits of the petitioner's claims leads the Court to conclude that no further proceedings are warranted in this instance.

■■ The Court must initially determine whether any of the grounds relied upon by the petitioner would justify the relief sought and, if not, whether other bases exist for considering the petitioner's grievance. First, from the lan-

guage of 28 U.S.C. § 2281, it applies only to the ability of federal court panels to issue injunctions restricting the enforcement, operation, or execution of *state* statutes. An examination of 28 U.S.C. § 2282 reveals that it requires the convening of a three-judge court if an injunction is sought regarding an Act of Congress. Since the petition merely challenges the constitutionality of an administrative regulation, a three-judge court need not be convened. *Anderson v. Internal Revenue Service*, 371 F.Supp. 1278 (D.Wyo.1974). Second, 42 U.S.C. § 1983 and the related civil rights statutes are inapplicable in this instance because only federal, not state, action is being challenged. *Roots v. Callahan*, 475 F.2d 751 (5th Cir. 1973). However, the petitioner presents justiciable questions for considering the propriety of granting a declaratory judgment pursuant to 28 U.S.C. § 2201. *Cf. Cushing v. Docking*, 360 F.Supp. 578 (D.Kan.1973). In the alternative, the petitioner's pleadings could be considered as a request for a writ of mandamus to compel the federal officials at the penal institution to permit him to correspond with other prisoners in other penal institutions if they were under an obligation to so act. *Jones v. Henderson*, 495 F.2d 559 (5th Cir. 1974).

▆▆ Leading the petitioner's list of authorities is *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). While the decision did involve the censorship of inmate mail, the Supreme Court rested its decision upon a finding that first amendment liberties of *free* citizens were chilled by the unnecessarily broad and overly vague standards for the censorship of prisoner mail. Avoiding the task of delineating the first amendment rights of inmates, the Supreme Court stated,

"In determining the proper standard of review for prison restrictions on inmate correspondence, we have no occasion to consider the extent to which an individual's right to free speech survives incarceration . . . ."

*Procunier v. Martinez, supra* at 408, 94 S.Ct. at 1809.

The petitioner's grievance would squarely raise this issue since both the sender and the intended recipient of the correspondence are incarcerated. The Court is not, however, faced with the censorship of bona fide attorney-client correspondence since the use of "jail house lawyers," while recognized, is given only limited application by federal courts. *Rizzo v. Zubrik*, 391 F.Supp. 1058 (S.D.N.Y.1975); see discussion *infra* of *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1968) and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935.

While the *Martinez* decision was written to apply to its narrow factual situation, the guidelines established therein serve as a standard for evaluating the propriety of the apparent censorship of the petitioner's letter to an inmate in another federal penal institution. Although the correspondence in question dealt with material being submitted to a federal court, the petitioner has no standing to raise the right of his "client" to access to the courts. The petitioner, however, attempts to arise *his* right of access to the courts as a "jailhouse lawyer" by raising the issue not reached in the *Martinez* decision. The Supreme Court in *Martinez* noted that assertions of first amendment rights by prison inmates raises the conflict between the traditional policy of judicial restraint regarding prisoner complaints and the recognition that inmates are not stripped of all their constitutional rights upon incarceration, see, *e. g., LeVier v. Woodson*, 443 F.2d 360 (10th Cir. 1971); *Bethea v. Crouse*, 417 F.2d 504 (10th Cir. 1969). The Court concluded, however, that restrictions on inmate correspondence were permissible if the following conditions were satisfied: (1) the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression, *i. e.*, a regulation authorizing mail cen-

sorship must further one or more of the substantial governmental interests in security, order, and rehabilitation; and (2) the limitation of first amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. By implication, footnote 14 of *Procunier v. Martinez,* 416 U.S. at 414, 94 S.Ct. 1800, gives approval to Bureau of Prisons Policy Statement No. 7300.1A. *White v. Woodroff,* 378 F. Supp. 1004 (W.D.Va.1974). Pertinent to the petitioner's grievance is Subsection (6)(H) of the Policy Statement entitled *"Correspondence with Inmates of Penal Institutions,"* which provides that,

> Inmates are allowed to correspond with persons confined in other penal institutions provided they are members of his immediate family. Normally, correspondence with other inmates who are not family members, will not be permitted except in unusual circumstances. . . . Inmates may correspond with inmates in other institutions providing the correspondence involves legal matters, in which the inmates are parties or witnesses in civil or criminal court action. Such correspondence will be sent under Special Cover Letters to insure prompt and proper delivery.

The correspondence in question does not fall within any of these limited exceptions. Further, under the *Martinez* standard, the Court finds that the application of this provision did not violate the first amendment rights of either the petitioner or his "client." First, this portion of the Policy Statement appears to be a rational attempt to balance the rehabilitative importance of correspondence with persons outside the penitentiary with the potential that such correspondence could serve as a conduit through which inmates could perpetuate further crimes, attempt or plan escapes, or disrupt the effective operation of the federal penal system. Second, as applied in this instance, the Policy Statement does not unnecessarily limit the petitioner's first amendment right. *McKin-*

*ney v. DeBord,* 507 F.2d 501 (9th Cir. 1974). Charged with effectuating governmental interests of penal order and security, federal penal authorities have long recognized the "propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief." *Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1968), see also, *Sostre v. McGinnis,* 442 F.2d 178, n. 45 (2d Cir. 1971). The potential for abuses by "jailhouse lawyers" would be particularly acute if the correspondence between federal penal institutions was sanctioned on the basis of an assertion that the correspondence is protected by a pseudo-attorney-client privilege.

In reaching this conclusion, the Court has also considered the Supreme Court decisions of *Johnson v. Avery, supra,* and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). These decisions hold that the prison officials' duty to assist inmates in obtaining access to the courts may be discharged by allowing ignorant and indigent prisoners the assistance of their more astute brethren in preparing habeas petitions and civil rights act complaints. However, each of these cases can be distinguished from the facts in this case. First, each case involved a state prisoner, rather than a federal inmate. This difference is important when related to the second distinction that the decisions were premised upon the state's failure to establish reasonable alternatives for the inmate population to gain access to legal or advisory counsel. In fact, in both cases the states precluded inmates from representing fellow inmates. The federal penal institutions have, during all times relevant to this case, allowed fellow inmates— those in the same institution—to represent other inmates by filing pleadings with courts. In addition to these alternatives, the growing awareness of prisoners' rights have dramatically increased the availability of programs for legal assistance to prisoners involving qualified attorneys or supervised law stu-

dents. Finally, *Johnson* and *Wolff*, dealt solely with the internal operations of *one* penal institution and the interrelationship between the inmates therein, not with inmates in various federal or state penal institutions. No decision since *Martinez* has addressed the extent to which an inmate's freedom of speech can be justifiably limited when he wishes to correspond with another inmate even when the correspondence indirectly relates to the other's right of free access to the courts. This Court is not prepared to hold 7300.1A unconstitutional in its application or due to the overbreadth its language under the facts presented herein and under the present status of the law.

 Finally, the Court was concerned that the prison authorities may have invaded the petitioner's right of free access to the courts when the pleadings submitted to the Clerk of this Court did not include Exhibit "A". Upon its own motion, the Court requested by mail that the petitioner provide the Court with a copy of Exhibit "A." Having received a copy of the letter in question, no prejudice has resulted from the delay, even assuming that the document was removed from the pleadings by an official of the United States Penitentiary at Leavenworth, Kansas. As noted in *Jessepe v. Atkins*, No. 74–96–C3 (D.Kan., April 16, 1974), a delay in the delivery of a prisoner's mail is not a denial of his right of free access to the courts so long as the delay is neither material or prejudicial. In addition, the Court realizes that the delay could be attributable to the petitioner's oversight in not including it in the documents initially filed with the Court or that the exhibit was misplaced during its transmittal to the Court. Since this Court delayed its consideration of the petitioner's pleadings until it received the exhibit, the delay would not be a sufficient basis for a constitutional attack. *Cf. Morgan v. Montanye*, 516 F.2d 1367 (2d Cir. 1975). Accordingly,

It is ordered

(1) That the petitioner be granted leave to proceed *in forma pauperis* and the Clerk is directed to file the pleadings currently lodged.

(2) Further, that the action so filed be, and the same is hereby, dismissed without prejudice.

(3) Further, that the Clerk transmit copies of this memorandum and order to the parties herein and to the Office of the United States Attorney for the District of Kansas.

It is so ordered.