**James Raymond PETERSON, Plaintiff,**

**v.**

**Jack DAVIS et al., Defendants.**

**Civ. A. No. 76–0115–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

June 3, 1976.

---

James R. Peterson, pro se.

Patrick A. O'Hare, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Virginia prisoner, seeking injunctive relief, brings this action under 42 U.S.C. § 1983 in which he challenges certain regulations of the Corrections Department of the State of Virginia, pertaining to correspondence between inmates incarcerated in separate facilities. Defendant Davis is the Director of the Division of Corrections for the Commonwealth. Additional defendants named are the superintendents of various state correctional facilities. Jurisdiction is attained pursuant to 28 U.S.C. § 1343(3). The matter comes before the Court on the motion of defendants for summary judgment and plaintiff's response thereto.

Plaintiff is challenging that aspect of the regulations dealing with inmate correspondence with prisoners incarcerated in other institutions. Inmate correspondence within the Virginia Department of Corrections is governed by Division Guideline No. 801 (revised).[1] That guideline provides in part: "That no correspondence shall be permitted with inmates serving sentences in other institutions under the control of the Division of Corrections unless the superintendents of the institutions concerned determine that such correspondence is in the best interest of both the inmate and the institution." Plaintiff challenges this regulation both on its face and as applied to him as being an impermissible restriction on his First and Fourteenth Constitutional Amendment rights.

Prior to March 29, 1976, Guideline No. 801 (revised) was interpreted to require an inmate who had earlier obtained permission from one superintendent to resolicit the consent of a superintendent each time the inmate was transferred. This practice affected plaintiff in late 1975 and early 1976 causing several delays and interrup-

---

1. Division Guideline No. 801 (revised) provides in pertinent part:

II. Administration of General Correspondence Privileges—The Superintendent of each institution is responsible for the guidance and direction of institutional staff in providing correspondence privileges and procedures within Division Guidelines:

1. Inmates may correspond with anyone they wish with the exception that no correspondence shall be permitted with inmates serving sentences in other institutions under the control of the Division of Corrections unless the Superintendents of the institutions concerned determine that such correspondence is in the best interest of both the inmate and the institution. Correspondence between members of a family serving sentences in different institutions shall be permitted with the approval of the superintendents involved.

2. All incoming correspondence of a general nature will be inspected for contraband but not otherwise read or censored with the exception that the Director specifically reserves the right to read for content mail of individual inmates in cases where there is reasonable cause to believe that an individual inmate is using the mails for purposes which directly threaten the security of the institution. The Director shall exercise this right upon written recommendation of an institutional Superintendent, Assistant Director or other proper party. The recommendation shall state the name of the person recommending the censorship and shall state specifically the grounds for the recommendation. All outgoing mail will not be accepted for mailing unless it is sealed (except in cases when payments for an inmate's purchases must be inserted by the accounting office or other appropriate office).

tions with his correspondence with one Ruby Mason.[2] On March 29, 1976, Guideline No. 801 (revised) was clarified by a memorandum which stated that an inmate need obtain the approval of an institutional superintendent on only one occasion. The memorandum also explains that permission is not to be terminated except for good cause. The reasons for a termination must be conveyed to an inmate and must be based on articulable facts. Thus, insofar as plaintiff's objections to the successive requests for permission or concern, the March 29, 1976 memorandum clarifies the requirement so as to conform to the requested relief. As plaintiff seeks only injunctive relief, this aspect of the complaint is moot. *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

Plaintiff also contends that the requirement of permission in the first instance violates his rights under the First Amendment. The defendants, on the other hand, argue that the regulation represents a permissible resolution of the conflict between an inmate's First Amendment rights and a legitimate governmental interest in the order and security of a penal institution. In this regard at least one court has expressly ruled for the defendants on this basis. *Lawrence v. Davis,* 401 F.Supp. 1203 (W.D.Va.1975). Restrictions placed on the exercise of prisoners' First Amendment rights are to be upheld if they further the substantial governmental interest of security, order and rehabilitation and the limitation is no greater than necessary or essential to the protection of the particular governmental interest involved. *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Burke v. Levi,* 391 F.Supp. 186 (E.D.Va.), *rev'd on other grounds,* 530 F.2d 967 (4th Cir. 1975). This Court is satisfied that requiring prior approval in advance of inmates corresponding with one another is necessary for the maintenance of security and good order in the penal institutions. Prisoners are often transferred from one institution to another in order to prevent violence and to protect the prisoner. *See, e. g., Patterson v. Riddle,* 407 F.Supp. 1035, 1037 (E.D.Va.1976). Totally unrestricted interfacility inmate correspondence could well undermine the prophylactic purposes of such a transfer. This concern for security justifies a limited censorship of prisoner mail. *Procunier v. Martinez,* 416 U.S. at 413, 94 S.Ct. 1800; *Burke v. Levi,* 391 F.Supp. at 190 (E.D.Va.), *rev'd on other grounds,* No. 75–1695 (4th Cir. 1975).

As the plaintiff does not contend that he was ever denied permission to correspond with another inmate, the Court finds it inappropriate to render any determination as to possible unconstitutional applications of the defendants' regulation.

An appropriate order will issue.

## ORDER

For the reasons stated in the Memorandum this day filed and deeming it just and proper so to do, it is ADJUDGED and ORDERED that defendants' motion for summary judgment be, and the same is hereby, granted, and that judgment be, and the same is hereby, entered for the defendants.

Let the Clerk send a copy of this Order and the accompanying Memorandum to the plaintiff and to counsel of record for the defendants.

---

2. Two factors, in addition to the requirement of seeking permission of each superintendent upon a transfer, augmented the delay. Uncontroverted affidavits supplied by defendants indicate that Mr. Peterson's difficulties occurred before and after the Christmas season holidays.

The seasonal increase in the volume of mail to be processed at that time coupled with the vacation schedule of the mail room supervisor contributed to the sizable backlog of undelivered mail.