**Karl Dean SCHLOBOHM, Plaintiff,**

v.

**U. S. ATTORNEY GENERAL, and Warden Charles Fenton, Defendants.**

Civ. A. No. 79–320.

United States District Court,
M. D. Pennsylvania.

Oct. 19, 1979.

Karl Dean Schlobohm, pro se.

Sal Cognetti, Jr., Asst. U. S. Atty., Scranton, Pa., for defendants.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

Petitioner Karl D. Schlobohm, an inmate at the United States Penitentiary, Lewisburg, Pennsylvania, filed this action pursuant to 28 U.S.C. § 2241 on March 13, 1979. Petitioner seeks habeas corpus relief from this Court alleging that Respondents have violated his Constitutional rights by restricting his mail. Petitioner also alleges that Bureau of Prisons Policy Statement 7300.1A is discriminatory, and he seeks declaratory and injunctive relief. On May 22, 1979 Respondents filed an Answer to the Petition, and an affidavit and exhibits in support thereof. On October 9, 1979, pursuant to an Order of this Court, Respondents filed an Amendment to their Answer, and the matter is now ripe for disposition. We

hold today that Petitioner's Constitutional rights have not been abridged, and therefore the Petition for a Writ of Habeas Corpus is dismissed.

The facts of this case are as follows.[1] On October 16, 1978, Petitioner was cited in an incident report for unauthorized use of the mail. The charges were that Petitioner was corresponding with an inmate at the Federal Correctional Institution, Milan, Michigan, the letter being sent through an intermediate party. Petitioner was served with a copy of the incident report on October 17, 1978, and on that day he appeared before the Unit Discipline Committee. At that time he admitted to corresponding with inmates at other institutions, and he acknowledged that he knew of the prison policy forbidding such action. Petitioner was then placed on indefinite mail restriction.

Petitioner then continued his claim through the prison's appeal process. First, on October 19, 1978 he appealed to the Warden, and then on December 12, 1978 he appealed to the Regional Director of the Bureau of Prisons. Both of these appeals were denied, and Petitioner now seeks relief from this Court.

Petitioner's claims are that the actions of Respondents in placing him on mail restriction violate his right of free speech, association and privacy, and that the policy concerning inmate correspondence is discriminatory in that it allows an exception for male/female relationships while denying equal treatment to male/male relationships. We cannot agree with these contentions.

■ We must preface our study of the present question with the admonition that this Court does not intend to thrust itself headlong into the management and operations of the prison system. Prison administrators should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Bell v. Wolfish*, —— U.S. ——, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). With this standard in mind, we will now consider Petitioner's First Amendment claims.

The United States Supreme Court has held that interference with inmate correspondence is permissible so long as the restrictions "further an important or substantial governmental interest unrelated to the suppression of expression," and they are "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). The governmental interests have been defined to be security, order, and rehabilitation. Id., at 413, 94 S.Ct. 1800.

Petitioner Karl Schlobohm admittedly violated the Bureau of Prisons Policy Statement when he corresponded with an inmate at another institution. He was given a three-step appeal process in which to adjudicate his claim. The only issues remaining, therefore, are the propriety of the Regulation itself and the permissibility of the punishment that was given.

The relevant section of the Bureau of Prisons Policy Statement 7300.1A reads as follows:

"Inmates are allowed to correspond with persons confined in other penal institutions provided they are members of his immediate family. Normally, correspondence with other inmates who are not family members will not be permitted except in unusual circumstances such as pre-existing male/female relationships which upon investigation shows that (a) the relationship is bona-fide and existed before commitment (b) the two proposed correspondents can show there is a genuine interest in the party's welfare; and (c) the staff of other institutions agree to the correspondence and agree that such

---

1. There is no dispute as to any of the material factual issues of this case. We will therefore not require an evidentiary hearing. *See* 8(a) Rules Governing Section 2254 Cases in United States District Courts, 28 U.S.C.A. Foll. § 2254 (1977) (made applicable to actions under 28 U.S.C. § 2241 by Rule 1(b)).

correspondence would be beneficial to both parties."[2]

■ It is the opinion of this Court today that this prohibition of inmate to inmate correspondence does indeed "further an important or substantial governmental interest." Cases have uniformly upheld the right of prison officials to restrict inmate to inmate correspondence. *See Sostre v. McGinnis*, 442 F.2d 178, 200 (2d Cir. 1971); *Heft v. Carlson*, 489 F.2d 268, 270 (5th Cir. 1973) ("Prison authorities have the right and responsibility to regulate correspondence of inmates"). But we are more enlightened by those Courts that have advanced actual reasons why the government wishes to restrict inmate to inmate correspondence. As the Court pointed out in *Mitchell v. Carlson*, 404 F.Supp. 1220, 1224 (D.Kan.1975), inmate to inmate correspondence could potentially serve as a "conduit through which inmates could perpetuate further crimes, attempt or plan escapes, or disrupt the effective operation of the federal penal system." And as the Eighth Circuit Court of Appeals pointed out in *Watts v. Brewer*, 588 F.2d 646, 650 (8th Cir. 1978), the institutional authorities have a peculiar and compelling interest in the regulation of this type of communication, giving as an example the situation where an inmate of one institution is transferred for his own safety to another institution, in which case the transfer could be completely frustrated by correspondence among inmates. We need not delve any further into the logic behind the Policy Statement in question. We are satisfied that the regulation of inmate to inmate correspondence as enumerated in the Policy Statement is designed to further the interests of security, order and rehabilitation.

We are also convinced that the second element of *Procunier* is satisfied, namely, that the regulation is no greater than is necessary to protect that interest. With the wide range of reasons that have been advanced to demonstrate the dangers to security, order and rehabilitation that inmate to inmate correspondence creates, it would be short-sighted of this Court to demand a more narrowly drawn restriction. It is in this area of regulating prison administration that we must pay special heed to the *Wolfish* policy of non-intervention. Ideally we would like to allow this correspondence, and to direct the prison officials to monitor each letter for threats to security or order. But in practical terms such an Order would cause shifts in manpower, it would result in a need for more help, more money, and changes in the administration of the entire system of mailing. We cannot act as administrator, and we will not substitute our judgment for that of the prison administrators. Since the present system forbids correspondence from inmate to inmate, but carves out from that restriction family members, and in some instances, girlfriends or boyfriends, we are satisfied that Policy Statement 7300.1A is as narrowly drawn as the prison system allows.

■ Petitioner has also alleged that since the regulation carves out an exception for male/female relationships while denying equal treatment for male/male relationships, it is unconstitutionally discriminatory. This claim is totally without merit. We consider it to be entirely within the discretion of the prison officials to determine that male/female relationships further an interest of rehabilitation while male/male relationships do not.

■ Finally, Petitioner attacks the imposition of the punishment of indefinite mail restriction. The facts of the present case indicate that Petitioner admittedly and knowingly violated existing prison regulations, and that he was afforded a full hearing in which to assert his claim. Restriction of his mail rights is reasonably related both to his actions and to the interests of the institution. The case of *Mayberry v. Robinson*, 427 F.Supp. 297 (M.D.Pa.1977) is instructive. In that case a prisoner attempted to communicate to an inmate at another

---

2. The focal point of our inquiry today is not so much the exceptions carved out in the policy statement, but rather the underlying order that prohibits inmates in one institution from corresponding with inmates in another.

institution by way of a third party. The punishment meted out was the suspension of contact with that third party, and the Court held that this punishment was a permissible intrusion into the rights of both parties to send and receive information. Respondents in the present case point out that "indefinite mail restriction" is a device which monitors the prisoner's use of the mail, and allows his own actions to determine the duration of this monitoring process. We hold today that this is not an impermissible intrusion into Petitioner's Constitutional rights.

In summary, our analysis today is tempered by the admonition of *Bell v. Wolfish, supra,* that we should allow prison officials discretion in monitoring and implementing their policies. But we do consider it our duty to safeguard any impermissible restrictions on the free speech of prisoners by applying the principles of *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Applying these principles to the present case we find that Policy Statement 7300.1A is legitimately related to the goals of security, order and rehabilitation, and that it is not impermissibly broad. We also hold that the punishment of indefinite mail restriction is a legitimate exercise of the prison administration's disciplinary power.

Accordingly, the Petition for a Writ of Habeas Corpus is dismissed.