**Frank ESPOSITO, Plaintiff,**

v.

**Patrick LEDDY, et al., Defendants.**

**No. 84 C 5379.**

United States District Court,
N.D. Illinois, E.D.

Oct. 3, 1985.

---

Frank Esposito, pro se.

Anton R. Valukas, U.S. Atty. by Elizabeth M. Landes, Asst. U.S. Atty., Chicago, Ill., appeared on behalf of federal defendants.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., appeared on behalf of defendant Duckworth.

## ORDER

BUA, District Judge.

Plaintiff Frank Esposito is a federal inmate who, at the time relevant to this action, was confined at the Metropolitan Correctional Center in Chicago, Illinois ("MCC"). While at MCC, Esposito was defending himself against criminal charges then pending in Indiana. A co-defendant in the Indiana prosecution was incarcerated in the Indiana State Prison in Michigan City, Indiana ("ISP"). Esposito brings this civil rights action seeking damages against both federal and Indiana prison officials on allegations they interfered with his correspondence with his co-defendant in violation of

his rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments. Before the Court are the motion for summary judgment of ISP Warden Jack R. Duckworth, the motion to dismiss or, in the alternative, for summary judgment of federal defendants Patrick Leddy, Sandra Stuby, Debra Kemp, and Dennis Luther, and Esposito's cross motion for partial summary judgment.

The critical facts in this case are not in dispute. In January and February 1984, Esposito's Indiana co-defendant Richard Kapachinski mailed several letters to Esposito at MCC. According to Esposito, the letters bore notations indicating they contained legal material for a co-defendant. Defendants Stuby and Kemp worked in the MCC mailroom. Although Esposito asserts both defendants handled his mail, only Stuby remembers receiving any letters from Kapachinski. Stuby returned the letters to Kapachinski pursuant to a Bureau of Prisons' Policy Statement conditioning the right of one inmate to correspond with another upon prior approval of the wardens of the two institutions where the inmate letter writer and recipient are confined. Under the regulation:

> An inmate may be permitted to correspond with an inmate confined in another penal or correctional institution, providing the other inmate is either a member of the immediate family, or is a party or a witness in a legal action in which both inmates are involved. The Warden may approve such correspondence in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence. The following additional limitations apply:
>
> (a) Such correspondence may always be inspected and read by staff at the sending and receiving institutions (it may not be sealed by the inmate); and
>
> (b) The Wardens of both institutions must approve of the correspondence.

28 C.F.R. § 540.16 (1985). After returning the letters, Stuby sent Esposito notice of her action with respect to the Kapachinski correspondence. Stuby also refused to mail a letter Esposito attempted to send to Kapachinski at ISP. According to Esposito, Stuby interfered with his mail on instructions from Leddy, Esposito's case manager at MCC.

On February 2, 1984, Esposito directed a written request to Stuby protesting the handling of the mail and asking Stuby to allow delivery of Kapachinski's letters. Stuby informed Esposito that he had to obtain approval through his case manager in order to correspond with an incarcerated co-defendant. On February 15, Esposito invoked the administrative remedy procedure to obtain permission to correspond with Kapachinski. In response to Esposito's administrative grievance request, Leddy contacted prosecuting authorities in Indiana and verified that Kapachinski was a co-defendant with Esposito. He thereupon authorized correspondence between Esposito and Kapachinski for legal purposes.

The resolution of his problem with federal authorities, however, did not end Esposito's difficulties in communicating with Kapachinski. Although federal officials had approved correspondence between Esposito and Kapachinski, officials at ISP had not. Several letters Esposito had sent Kapachinski were returned with an explanation that Indiana law requires the Indiana Department of Corrections to give prior authorization for correspondence between offenders incarcerated in Indiana correctional facilities and those incarcerated in other correctional facilities. See Ind.Code § 11–11–3–2(b)(1) (1983 Supp.). Kapachinski had not received the necessary permission to correspond with Esposito. Pursuing his right under Indiana law, Kapachinski invoked the administrative grievance procedure to request authorization to correspond with Esposito. Although Duckworth initially denied Kapachinski's request, his decision was overruled by the Director of Adult Institutions for the Indiana Department of Correction who granted permission to correspond on April 25, 1984.

Although the pro se complaint contains ten separate counts asserting in very general terms that defendants conspired to violate a wide array of Esposito's constitutional rights, the facts alleged in the pleadings and arguments advanced in his briefs focus on the contention that defendants violated Esposito's rights under the First, Fifth, and Fourteenth Amendments in the handling of his mail. In support of his claim, Esposito relies primarily on *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Although *Martinez* considered the constitutionality of California regulations restricting the personal correspondence of prison inmates, its precedential value and usefulness for analyzing the questions presented in this case are, as Esposito himself recognizes, somewhat limited. *Martinez* rests not on the rights of prisoners, but rather on the First Amendment rights of those free citizens who correspond with inmates. *Id.* at 409, 94 S.Ct. at 1809. By reviewing the constitutionality of the challenged regulations in terms of the rights of the nonprisoner correspondent, the Court explicitly left undecided the question whether and to what extent an individual's right to free speech survives conviction and incarceration. *Id.* at 408, 94 S.Ct. at 1809. As both correspondents in this case are prisoners, *Martinez* is inapplicable. More apposite are subsequent Supreme Court opinions which examined the First Amendment rights of prisoners.

The standard that governs this case was set out in *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

We start with the familiar proposition that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system....

*Id.* at 822, 94 S.Ct. at 2804 (citations omitted). Moreover, as *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) instructs, the courts must accord the professional and expert judgment of prison officials wide-ranging deference when determining whether their decision to restrict First Amendment rights is grounded upon legitimate correctional policies and goals. Such deference to the informed discretion of prison administrators is required in the absence of substantial evidence that they have unreasonably exaggerated their response to proper correctional concerns like security and order. *Id.* at 128, 97 S.Ct. at 2539.

■ Viewed in light of the standards set out in *Pell* and *Jones,* the restrictions imposed by the regulations at issue in this case do not violate Esposito's rights under the First Amendment. Courts have with near unanimity rejected constitutional challenges to the facial validity of prison regulations that restrict inmate correspondence by imposing a burden on the prisoner to obtain prior approval for any written communication with inmates in another institution. *Watts v. Brewer,* 588 F.2d 646 (8th Cir.1978); *Schlobohm v. U.S. Attorney General,* 479 F.Supp. 401 (M.D.Pa.1979); *Fowler v. Graham,* 478 F.Supp. 90 (D.S.C. 1979); *Mitchell v. Carlson,* 404 F.Supp. 1220 (D.Kan.1975); *Williams v. Ward,* 404 F.Supp. 170 (S.D.N.Y.1975); *Lawrence v. Davis,* 401 F.Supp. 1203 (W.D.Va.1975). *But see Safley v. Turner,* 586 F.Supp. 589, 596 (W.D.Mo.1984) (restrictions overbroad). Indeed, courts have specifically upheld against First Amendment scrutiny both the federal regulation that Esposito contests, *Antonelli v. Stuby,* 84 C 1344 (N.D.Ill. Dec. 21, 1984), and a state regulation that parallels the Indiana statute Duckworth relied upon in returning the mail Esposito sent Kapachinski. *Peterson v. Davis,* 415 F.Supp. 198 (E.D.Va.1976). Those courts

accept the need for prison officials to regulate mail between prisoners, citing legitimate concerns that prisoners could use such correspondence to plan escapes or other criminal activities, to subvert the daily operations of the prisons by coordinating disruptive activities, or to perpetuate gang influence by enlisting cohorts to continue threats against inmates whom prison officials have transferred in order to protect against gang violence. In light of the weight the courts must ascribe to the informed judgment of those charged with the difficult task of running the prisons, this Court agrees that the restrictions embodied in the federal and Indiana regulations at issue in this case are not so broad or arbitrary as to violate Esposito's limited right to expression under the First Amendment.

 Although the restrictions the regulations place on inmate correspondence do not themselves violate the First Amendment, prison officials are not necessarily free to invoke these regulations to arbitrarily prohibit one inmate from writing another. In *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir.1981), a jailhouse lawyer attacked on First Amendment grounds a state regulation prison officials invoked to prohibit all correspondence between him and an inmate "client." While upholding the right of prison officials to closely regulate inmate mail, the Ninth Circuit held that application of the regulation to totally bar all correspondence between the two inmates violated Storseth's First Amendment rights. *Id.* at 1355–56. But Esposito cannot complain that defendants applied their regulations to him in an arbitrary or unconstitutional manner. Unlike the jailhouse lawyer in *Storseth*, Esposito was allowed to communicate by letter with his co-defendant once he gained approval from the appropriate authorities.

 Esposito also contends that defendants violated his rights to due process by returning his mail without according him the necessary procedural safeguards. He requests the Court to extend the protections delineated in *Martinez* to prohibit prison officials from returning censored or prohibited mail before giving the inmate a right to contest the censorship decision.

As the Court noted earlier, Esposito's reliance on *Martinez* is misplaced because *Martinez* considered only the rights of free citizens. Although a few courts have assumed that interference with mail between inmates is protected by the due process clause, *see Storseth*, 654 F.2d at 1355, these cases have not independently analyzed the question whether an inmate's limited interest in corresponding with another inmate is a "liberty" interest subject to scrutiny under the Fifth and Fourteenth Amendments. This Court need not decide that question here. Assuming that such an interest exists, the procedural safeguards provided Esposito were sufficient to comply with the demands of due process.

Prison regulations placed Esposito on notice of the need to obtain prior approval before writing to an inmate in another institution. In contravention of the regulations, Esposito began corresponding with Kapachinski. When prison authorities intercepted the unauthorized mail, they returned the letters to the sender with notice of reasons for the nondelivery. They also informed the intended recipient of the rejected correspondence and the process required for obtaining permission to correspond with another inmate. When Esposito and Kapachinski routed their requests for permission to correspond with one another through proper channels, the requests were approved. Balancing the governmental interests of institutional security, order, and rehabilitation against the inmate's interest in preserving First Amendment liberties, the procedures accorded Esposito met the minimum requirements necessary to ensure fairness.

Requiring a hearing before return of unauthorized interprison mail would serve no useful purpose. This is not a situation where, as in *Martinez*, prison officials are censoring letters at random. Instead, the disputed regulations require prior approval of all inmate-to-inmate communications. As the regulation itself is valid, the only facts to be determined are whether the

letter is to or from another inmate and whether the inmates have obtained prior permission for their correspondence. These factual questions can readily be determined without the need for an administratively burdensome hearing every time the regulation is violated. Given the governmental interest in restricting potentially disruptive communication between inmates, it is not unreasonable to place the burden on the prisoner to get approval for writing to a fellow inmate before he sends his letter.

■ Esposito also contends that defendants hindered his correspondence with his co-defendant in violation of his right of access to the courts and his Sixth Amendment right to counsel. In order to state a claim for denial of access to the courts, plaintiff must show that the challenged conduct resulted in actual injury or prejudice to potential or pending litigation. *Hudson v. Robinson,* 678 F.2d 462, 466 (3d Cir.1982); *Isaac v. Jones,* 529 F.Supp. 175, 179 (N.D.Ill.1981); *see Hoppins v. Wallace,* 751 F.2d 1161, 1162 (11th Cir.1985); *Grady v. Wilken,* 735 F.2d 303, 306 (8th Cir.1984); *Jones v. Franzen,* 697 F.2d 801, 803 (7th Cir.1983); *Bach v. Coughlin,* 508 F.2d 303, 308 (7th Cir.1974). Similarly, a showing of prejudice is required to substantiate a deprivation of the right to counsel under the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Siverson v. O'Leary,* 764 F.2d 1208, 1215 (7th Cir. 1985). Esposito presents no facts to show that the interference with his mail prejudiced his defense. Nor is Esposito's claim one where such prejudice may be presumed. Absent any allegations of prejudice, Esposito's claims that he was deprived of counsel and access to the courts must fail.

## CONCLUSION

For the reasons stated above, the Court denies Esposito's motion for summary judgment and grants summary judgment in favor of defendants. An order of judgment shall enter dismissing this case in its entirety.

IT IS SO ORDERED.