**William PERRY, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 26A01–8609–CR–00247.

Court of Appeals of Indiana,
First District.

March 31, 1987.

Steven C. Litz, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

William Perry appeals the trial court's admission into evidence of a letter written by Perry. We affirm.

## FACTS

The facts most favorable to the judgment reveal that on October 17, 1985, William Perry was arrested and charged with burglary of a mobile home. Also arrested were Perry's accomplices, John Perry (no relation to William) and Brian Hedge. Pending trial William Perry and John Perry were held at the Gibson County Jail.

On November 23, 1985, Deputy Sheriff Barr reported to the jail to work. Upon arrival, Deputy Barr noticed two or three magazines lying on the kitchen table which were to be given to John Perry. The deputy searched the magazines prior to delivery. Inside one of the magazines, Deputy Barr discovered an envelope addressed to "John Perry, Gibson County Jail, 47670" with a return address of "Bill Perry". The envelope was sealed and had two twenty cent stamps. At trial, the deputy testified, "It was inside a National Enquirer magazine. It was inside a folded page. The page was folded over and it was inside of it inside the magazine." Record at 322. He further testified that the folded page made an envelope-like pocket for the letter. Record at 322. Deputy Barr removed the envelope and saw that it was correspondence between two prisoners. Thereafter, he opened the envelope and read the letter contained therein.

At William Perry's trial, the prosecution introduced both the envelope and the letter. Over the defendant's objection, the trial court admitted both exhibits into evidence. The letter, written by William Perry, incriminated him since he admitted being at the scene of the offense. After a jury trial, Perry was convicted of burglary, a class C felony.

## ISSUE

Whether the trial court erred in admitting into evidence a letter written by the defendant which was seized by a jailer.

## DISCUSSION AND DECISION

In Indiana, a confined person may send and receive an unlimited amount of correspondence. Indiana Code section 11–11–3–2(a). However, the correctional facility "may require prior approval of correspondence between a confined person and another person if the other person: ... (3) Is being held in a county jail...." Ind.Code § 11–11–3–2(b)(3). Indiana Code section 11–11–3–3 specifies that correspondence between an inmate and his attorney, a governmental official, the court, or the media, cannot be opened except in the inmate's presence. Indiana Code section 11–11–3–4, at the time of Perry's trial,[1] provided as follows:

"Sec. 4. (a) If correspondence is from a person not enumerated in section 3[11–11–3–3] of this chapter, it may be opened to inspect for and remove contraband or prohibited property and to permit removal of funds for crediting to the confined person's account. That piece of correspondence may not be read, censored, copied, or otherwise interfered with in regard to its prompt delivery unless the department has reasonable grounds to believe that:

(1) it poses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program; or

(2) it is prohibited under section 2(b) of this chapter.

The confined person must be informed of the removal of funds, including the amount.

"(b) If correspondence is to a person not enumerated in section 2(b) or section 3 of this chapter, it may be sealed by the confined person. If, however, the department has reasonable grounds to believe that the correspondence:

(1) may contain contraband or prohibited property; or

1. Ind.Code § 11–11–3–4 has since been amended with minor changes.

(2) poses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program; or

(3) is prohibited under section 2(b) of this chapter;

it may be opened for inspection and removal of the contraband or the prohibited property, when appropriate, or reading and appropriate action...."

William Perry alleges that the seizure of his letter addressed to John Perry violated the United States constitutional prohibition against unreasonable searches and seizures. U.S. Const. amend. IV. Perry does not dispute the right of the jail to inspect his incoming and outgoing mail for contraband. However, he asserts, "Once that intrusion reveals the absence of contraband, any further search and/or seizure trampels his Fourth Amendment rights." Appellant's brief at 7. He asserts that it was unconstitutional for the deputy to read his letter and for the State to admit it into evidence.

Our supreme court twice has addressed the Fourth Amendment implications surrounding the reading of inmate mail. In *Rennert v. State* (1975), 263 Ind. 274, 329 N.E.2d 595, a prisoner wrote a letter to a news publisher. Jail authorities confiscated the letter which was later admitted into evidence at trial against him. Because the defendant did not present a Fourth Amendment argument at trial, our supreme court refused to decide the issue on appeal. However, in very strong dicta, the court stated, "Appellant's fourth amendment claim, framed in terms of 'an illegal seizure', is tenuous at best. Undoubtedly, there is a legitimate state interest in searching a prisoner's mail for contraband. So, too, *the state may justify reading the correspondence to determine whether an escape attempt is impending.*" *Id.* at 277, 329 N.E.2d at 598 (emphasis added). The court then stressed that the prisoner had no expectations of privacy in the letter because he knew that all mail would be inspected. Since he had no privacy expectations, the court said in dicta that a

Fourth Amendment challenge was groundless.

Our supreme court relied upon *Rennert* in *Grooms v. State* (1978), 269 Ind. 212, 379 N.E.2d 458, *cert. denied*, 439 U.S. 1131, 99 S.Ct. 1053, 59 L.Ed.2d 93. In that case, an inmate attempted to mail a letter to a non-incarcerated person. As in *Rennert,* the inmate had no expectations of privacy because he knew that prison officials read prisoners' mail before it was sent. The *Grooms* court therefore concluded that the Fourth Amendment did not preclude the introduction of the letter into evidence against the defendant. *Id.* at 220–21, 379 N.E.2d at 463.

Our court has upheld Ind.Code § 11–11–3–2 against a First Amendment challenge. In *Avery v. Faulkner* (1984), Ind.App., 471 N.E.2d 1226, *trans. denied*, an inmate at the Westville Correctional Center corresponded with other inmates. However, he did not obtain advance approval of the correspondence pursuant to the dictates of Ind.Code § 11–11–3–2. As a result, several letters were returned to the inmate. When he challenged the statute as abridging free speech, Judge Staton, writing for the court, cited cases outside of Indiana which have upheld similar statutes. Judge Staton went on to say:

"Contrary to Avery's contentions, constitutionally guaranteed rights can be restricted if the restriction furthers a substantial government interest and is no greater than necessary to protect the interest involved. [*Peterson v. Davis* (E.D.Va.1976), 415 F.Supp. 198, 200; *Lawrence v. Davis* (W.D.Va.1975), 401 F.Supp. 1203, 1205.] Order, security, and rehabilitation are the government interests involved in the regulation of inmate correspondence. [*Schlobohm v. U.S. Atty. Gen.* (M.D.Penn.1979), 479 F.Supp. 401, 402]; *Peterson, supra* at 200. Prior approval of correspondence between inmates allows prison officials a better opportunity to provide security for transferred prisoners and order for the institution. *Peterson, supra* at 200. *In addition, unrestricted correspondence could serve as a conduit through which inmates could plan further crimes, es-*

*capes, or disruptions of order in the penal institution. Schlobohm, supra at 403."*

*Avery,* at 1228 (emphasis added). Judge Staton then held that the government had substantial interests and that the prior approval restriction was no greater than necessary to protect the government's interests. Therefore, Ind.Code § 11–11–3–2 was not unconstitutional as to an inmate's First Amendment rights. Although not directly applicable, much of *Avery's* rationale is appropriate when analyzing a Fourth Amendment claim.

In general, other courts have upheld the inspection of prisoner mail against Fourth Amendment challenges. *Stroud v. United States* (1919), 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103; *see also* cases cited in 4 W. LaFave, *Search and Seizure* § 10.9(c) (2d ed. 1987); Annot., 52 A.L.R.3d 548 (1973); *cf. Procunier v. Martinez* (1974), 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224. As for correspondence between inmates rather than between inmates and people outside of prison, we find a Maryland appellate court particularly instructive:

"The rationale for permitting more extensive interference with the free flow of communication between inmates, particularly material enclosed in sealed envelopes, is self-evident. The potential for mischief—escape, riot, passage of contraband, disturbance, defiance of authority, injury to correctional staff or other inmates—is infinitely greater from unfettered correspondence among inmates than it is from correspondence with persons outside the institution. Accordingly, there is a more significant identifiable governmental interest in regulating that exchange than there is in controlling external correspondence (particularly that *from* the inmate), thereby necessitating a greater permissible invasion of an inmate's 'right' of privacy."

*Thomas v. State* (1978), 39 Md.App. 217, 228–29, 384 A.2d 772, 777 (emphasis in original), *judgment aff'd,* 285 Md. 458, 404 A.2d 257 (1979).

■ In the present case, the seizure of Perry's letter was reasonable. The depu-

ty's search of the magazines was justified to discover contraband such as drugs or knives. When the deputy discovered the envelope hidden in one of the magazines, he reasonably seized it for inspection. First, he had the right to search the contents of the envelope for contraband. Second, under the circumstances, he had the right to read the letter. Perry argues that while the search for contraband was reasonable, the deputy should have not read the letter. However, since the letter was addressed to a fellow inmate, the deputy had the right to inspect the letter's contents for plans concerning, *inter alia,* escape attempts, riots, further crimes, and attacks on jail guards or officials. *Avery,* at 1228; *Thomas,* 39 Md.App. at 228, 384 A.2d at 777. Moreover, the letter was addressed to an inmate who was Perry's co-defendant which increased the possibility of secret, illegal plans contained therein. Also, the manner in which the envelope was discovered provided further justification for reading the letter. The envelope was secreted within the folded pages of a magazine, forming a pocket to conceal its contents. The suspicion created by this discovery further warranted the deputy to not only search the envelope for contraband but also to read the letter. Perry argues that certain language in our case of *Sureeporn Roll v. State* (1985), Ind.App., 473 N.E.2d 161, precludes reading the letter. However, that case involved a halfway house, not a county jail, and the letter was mailed from an "outsider" to an inmate. Therefore, it is not applicable to the case under consideration. The deputy's reading of Perry's letter thus was a reasonable search and seizure under the Fourth Amendment.

■ The deputy also followed Indiana's statutory guidelines. Perry focuses upon the language of Ind.Code § 11–11–3–4(a)(1) and (b)(2) which permits prison officials to read an inmate's mail if they have reasonable grounds to believe that "it poses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program." However, Perry ignores the language of (a)(2) and (b)(3)

which permits reading inmate correspondence if it "is prohibited under section 2(b) of this chapter." Section 2(b) prohibits correspondence between fellow inmates unless prior approval is obtained. In the present case, William Perry's letter was directed toward a fellow inmate. Since Perry did not obtain prior approval of the correspondence, the deputy acted within the dictates of Ind.Code § 11–11–3–4 when he seized and read the letter.

Even if the letter was illegally seized and improperly admitted into evidence against Perry, any error was harmless. The evidence at trial was overwhelming as to the defendant's guilt. Two co-defendants confessed, a police officer who was present immediately after the burglary testified, and a neighbor provided corroborating testimony. Thus, any possible error was harmless in finding Perry guilty beyond a reasonable doubt.

Judgment affirmed.

NEAL and STATON, JJ., concur.