# Authority to Advance Funds to Cuban Detainees To Purchase Commissary Items

The Director of the Bureau of Prisons has the authority under 18 U.S.C. § 4042 to direct that money from general prison operating funds be advanced to indigent Cuban detainees as a credit to their commissary accounts.

March 30, 1988

MEMORANDUM OPINION FOR THE DIRECTOR
BUREAU OF PRISONS

You have asked our opinion on the question whether you have authority to direct that certain indigent Cuban detainees in secured housing status in federal prisons be advanced from general prison operating funds a small sum of money each month, as a credit to their commissary accounts, to purchase items from the commissary.[1] In your memorandum of March 1, 1988, you point out that, because of their secured housing status, the detainees in question can be given no opportunity to earn money by working in a prison assignment. You further state that they are housed under particularly stressful circumstances, with few of the opportunities other inmates have for relaxation and recreation. In your view it is necessary to provide a way for these individuals to purchase items from the prison commissary such as magazines and cigarettes, in order to avoid possible violence.

In his memorandum of March 7, 1988, your General Counsel states that, in his opinion, authority to make the advances in question is implicit in the general authority given the Director of the Bureau of Prisons in 18 U.S.C. § 4042(2) to provide for the "safekeeping, care, and subsistence" of all inmates in federal prisons. He notes that section 4042(2) has been regarded as the source of the Director's authority to provide inmates with "basic and necessary items of hygiene, such as soap, toothpaste and toothbrushes." In his opinion that section also authorizes the provision of less essential items, "where, as here, the items are considered to be important if not essential to maintain calm in a group that has proved itself highly disruptive." For reasons set forth below, we agree that it is within your authority to direct that these advances be made.

The general authority of the Attorney General in directing the Bureau of Prisons, which has been delegated to the Director in 28 C.F.R. § 0.96, is set forth in

---

[1] The specific amount you suggest is $15 per month. As a credit to each inmate's account at the commissary, this sum could be used to purchase any items available in the commissary, including postage stamps, snacks, magazines, and cigarettes. The advance would be considered a loan to be repaid when possible, not a gift.

18 U.S.C. § 4042. As relevant here, subsection (1) gives the Bureau charge of the "management and regulation" of all federal penal institutions; subsection (2) directs the Bureau to provide "suitable quarters" for inmates, and for their "safe-keeping, care, and subsistence"; and subsection (3) directs the Bureau to provide "protection, instruction, and discipline" to inmates. These general formulations first appeared in the 1930 statute that established the federal prison system under the direction of the Bureau of Prisons, *see* Pub. L. No. 71–218, 46 Stat. 325 (1930). The precise meaning of the terms employed in section 4042 is not discussed in the legislative history of the 1930 statute, nor is the more general question of the Attorney General's authority under this section. And, we have been informed by your General Counsel that neither has ever been given formal administrative construction that would be relevant in this situation. It also appears to be the case, again based on our discussion with your General Counsel's office, that the Bureau has never before implemented a policy of making loans to inmates to permit them to purchase items at the prison commissary.

With this background in mind, we turn to the principles that would apply in testing the legality of the directive proposed in your March 1 memorandum. Over the years courts have uniformly given a broad construction to the general managerial and administrative powers of the Bureau of Prisons under section 4042. They have accorded federal prison officials "wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Schlobohm v. United States Attorney General*, 479 F. Supp. 401, 402 (M.D. Pa. 1979). *See also Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 126 (1977) (recognizing the "wide-ranging deference to be accorded the decisions of prison administrators"). Even in the face of constitutional challenges under the Fifth and Eighth Amendments, courts have recognized the necessity of giving federal prison officials wide latitude in providing for the care of inmates and the management of penal institutions. *See Bell v. Wolfish*, 441 U.S. 520, 546–47, 560 (1979); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 972 (D.C. Cir. 1979). In *Bell*, Justice Rehnquist noted that "maintaining institutional security and preserving internal order and discipline are essential goals" of a prison administrator, and that "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel." 441 U.S. at 546–47. *See also Pell v. Procunier*, 417 U.S. 817 (1974)(deference given state prison officials in the face of a First Amendment challenge to prison regulations restricting inmates' ability to publish writings).

The deference that has been accorded the Bureau of Prisons in construing and applying the statute which it administers is consistent with the general administrative law principles reaffirmed by the Supreme Court. *See Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 842–45 (1984)("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"); *see also Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1086 (D.C. Cir. 1987)(en banc), *cert. denied*, 485 U.S. 913 (1988).

Under *Chevron*, if Congress has not "directly addressed the precise question at issue," then the only question is whether the agency's interpretation of the statute is "a reasonable one." 467 U.S. at 843, 845. Applying the legal principles set forth in the foregoing paragraphs to the proposal at issue here, we see no basis upon which to take issue with your judgment that it is within your discretionary authority under section 4042 to expend Bureau of Prison funds in this fashion.[2] No statute expressly prohibits providing money advances to inmates; nor does your current appropriations statute suggest such a limit on your ability to expend funds to carry out your responsibilities under section 4042. Finally, we know of no general bar on expending appropriated funds for the kinds of items that we understand are generally available in prison commissaries. While section 4042 does not "directly address" the question of money advances to inmates, we believe that, especially in these circumstances, such advances are consistent with the congressional intention expressed in the broad and general terms "safekeeping" and "care" in subsection (2), as well as the term "protection" in subsection (3). We have no basis for questioning your judgment that the expenditure of funds you propose is in fact likely to help avert prison violence, and that it will thus be in direct furtherance of your more general responsibilities under the statute. As such, your construction of the statute seems to us both reasonable and permissible, as we understand the *Chevron* Court's use of those terms.

In sum, under the general administrative law principles of the *Chevron* case, and the more specific legal principles developed in caselaw interpreting the authority of federal prison officials, we believe that the proposed directive is within your authority under 18 U.S.C. § 4042.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[2] The fact that the funds will not actually be paid out to each inmate, but rather credited to their individual commissary accounts at the commissary, does not strike us as having any independent legal significance, if the funds are authorized to be expanded under section 4042. Nor does describing the credits as loans whose repayment is expected as soon as possible after an inmate's release.